234 So.2d 184

STATE of Louisiana

v.

Daniel Ezell NAILS, Jr. and Alfred Dorsey, Jr.

No. 50016.

March 30, 1970.

Rehearing Denied May 4, 1970.

Gold, Hall & Skye, James D. Davis, Alexandria, for appellants.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Edwin O. Ware, Dist. Atty., Robert P. Jackson, Asst. Dist. Atty., for appellee.

FOURNET, Chief Justice.

The defendant, Daniel Ezell Nails, Jr., who was jointly charged with Walter L. Cobb, Jr. and Alfred Dorsey, Jr., by bill of information with the crime of armed robbery, and tried with Dorsey,[1] Cobb having pleaded guilty, prosecutes this appeal from his conviction and sentence to serve 30 years at hard labor in the state penitentiary; and although more than 80 bills of exception were reserved during the course of the trial, defendant is relying for reversal of his conviction and sentence upon ten of these alleged errors, having abandoned the 11th bill that was perfected.

In order to understand and properly dispose of these several bills, we think it necessary to give a résumé of the relevant facts as reflected by the record. Near 6:00 o'clock on the evening of January 26, 1968 Nails and Cobb borrowed the 1958 Chevrolet belonging to Doretha Jenkins,

1. Dorsey was also convicted, but has not appealed.

sister of Ruby Lewis with whom Cobb lived at 125 Eighth Street in the City of Alexandria and where Nails had been living for approximately two weeks since coming from Alabama, Doretha and her mother living in the other half of the double house at 127 Eighth Street. Shortly after 6:00 p. m. Nails accompanied by Cobb and Dorsey, entered the Phil-A-Sak self-service store outside of the gates of England Air Force Base near Alexandria, Louisiana, and after having gathered some groceries and asking the price of a case of beer, purchased a six pack of beer, replacing the other groceries, then returning within the hour to the home of Ruby Lewis. The three left again shortly thereafter, fully armed, in the Chevrolet and at approximately 8:15 p. m. they returned to the store. Nails and Cobb proceeded to the check-out counter, ordering a pack of cigarettes and when the cashier, Harrison, turned around he was faced by Cobb and Nails with guns drawn, ordering him to open the cash drawer. At the same time Dorsey walked over to the magazine rack near the front door where the manager's six year old son was looking at the magazines and grabbed the child, holding him at gunpoint with his hand over the child's mouth. After Nails and Cobb gathered the money from the drawer, Cobb led the cashier to the rear rest room, striking him on the head with his gun. In the meantime, upon hearing the sound of money falling and observing in an overhead mirror a Negro man behind the cash register, the manager and the stockboy, who were stocking shelves, started to the front of the store. Dorsey, holding the gun to the child's head, told them not to come further or he would "blow their heads off," whereupon the stockboy retreated and the manager made no further move. The robbers then quickly left the store, taking the child with them until they reached their car, and then threw him to the ground and made their getaway in the Chevrolet, returning to the home of Ruby Lewis who noticed each with a handkerchief in his hands but testified she could not say what, if anything, was contained in the handkerchiefs, although she did see Cobb placing his gun on the bedroom dresser. Shortly thereafter Dorsey left and Nails and Cobb were seen by Doretha handling some paper money. Later Nails left for about 30 minutes, having gone to LaVernes Telephone Answering Service to send a money order to his wife in Alabama, paying for the same in 17 one dollar bills, some loose change and ten dollars in quarters that were wrapped in coin folders that had the notations, "Food Service Office" and "19th of January, 1968." This information was relayed to the police department who dispatched officers to the business where Officer LaCour took the wrapper, marking the same as evidence, and obtained the address of Nails as the sender of the money

order. The officers proceeded to the address, observing there a dark tan Chevrolet parked in front of the residence from which he copied the license number. Doretha's mother, having seen the officers, then questioned Doretha as to where she had been, informing her the officers were looking at her car. After the officers left, Ruby, Nails and Cobb went out to the car. The following morning when Ruby heard of the burglary on the news, Cobb told her "they" had committed the crime. At noon that day Ruby left with Nails and Cobb on a bus to California; Nails and Cobb were returned to Alexandria for prosecution following their extradition from California in March, 1968.

After careful study of the several bills relied upon, we find them totally lacking in merit for the reason they are completely irrelevant or lack support factually as well as legally which will be hereinafter shown.

■ Bills of Exception No. 1 and 3 involve the same issue and will be treated together, each having been reserved when the trial judge sustained the State's objection to defense counsel calling upon prosecuting witnesses, Dan Burns and Adrian N. Lamkin, III, respectively, to describe the facial and physical characteristics of the deputy

from the sheriff's department who had taken a statement from them after the robbery.

We think the trial judge properly ruled this evidence was irrelevant and immaterial,[2] pointing out the statement the deputy took was not used in evidence, and further observed, "This is not a testing of the witness' memory and identification capabilities. There would be no cause for the witness to remember the features of a Deputy Sheriff who was taking a statement from him regarding a recently committed robbery."

■ The second bill of exception was reserved when the trial judge denied defense counsel's request during the cross-examination of Adrian Lamkin, III, that the district attorney produce a report prepared by the deputy on the night of the robbery following his interview with Lamkin, the stockboy, which had been read to him by the district attorney preparatory for trial to refresh his memory.

We think the trial judge's ruling is correct. Under the express provisions of Revised Statute 15:279 "A witness * * * for the purpose of refreshing his present memory * * * may examine memoranda, and it is immaterial by whom or when the memoranda were made, provided that,

2. R.S. 15:441 defines relevant evidence as "that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."

after such inspection, the witness can testify to the fact," and as aptly observed by the trial judge in his per curiam, "There is no rule of law that says that defense counsel is entitled to see a document that a person has used to refresh his memory prior to his taking the witness stand," and counsel has cited none.

■■ The jurisprudence is well settled that the state is not required to permit the inspection of any of its evidence in a pending criminal prosecution, which would include police reports, the exception being a written confession of the accused,[3] and at the time of the trial a defendant is not entitled to the production of a prior written statement of a witness unless the proper foundation has been laid for impeachment, the witness denying making the statement or defense counsel showing that the report indicates that one or more of the material statements therein are contrary to the sworn testimony.[4]

Bill of exception No. 4 and 5 were reserved while the Phil-A-Sak cashier was testifying as a state witness, having stated on direct examination that from three different sets of photographs shown him on three separate occasions of suspects by the deputies of the sheriff's department, he had each time identified the three defendants. While on cross-examination counsel for defendant, through a series of questions, interrogated the witness as to whether he had a mental image of the photographs shown him on the three occasions, and whether or not he was able to identify the defendant the second and third times from his observation at the robbery or from making a comparison from his observation of the previous sets of photographs. Upon answering he had no such mental image of what the pictures showed, knowing only they were pictures of the men that are the defendants whom he had identified in court, defense counsel continued this line of questioning to which the district attorney's objection was sustained by the trial judge and when he sought to further pursue the same line of argument, again the district attorney's objection was sustained on the ground it was repetitious.

■ The basis of bills No. 4 and 5 perfected by counsel is that the ruling of the trial judge curtailed his line of cross-examination. Bill 4 as perfected states the cashier was asked "whether or not he was told on the second or third occasion that he was shown the pictures by the deputies that they had suggested to him that he had picked out the right

---

3. State v. Pailet, 246 La. 483, 165 So. 2d 294; State v. Dickson, 248 La. 500, 180 So.2d 403; State v. Hunter, 250 La. 295, 195 So.2d 273; State v. Cardinale, 251 La. 827, 206 So.2d 510.

4. State v. Cooper, 249 La. 654, 190 So. 2d 86; State v. Young, 249 La. 1053, 1054, 193 So.2d 243; State v. Martin, 250 La. 705, 198 So.2d 897; State v. Whitfield, 253 La. 679, 219 So.2d 493.

pictures," maintaining the question was a foundation question leading to further cross-examination. In bill No. 5 he merely states that the witness had not explained his position with regard to the photographs when the examination was curtailed. Counsel, obviously realizing that the bills lacked merit, has abandoned that position and now advances the argument that at the time the cashier identified the defendants from the photographs no attorney was present representing Nails and argues that the in-court identification was "tainted" by his previous identification of the defendants from the photographs.

We fail to appreciate what comfort counsel can get from this new approach, the cases relied upon being inapposite from a factual as well as a legal standpoint.[5] The record shows that the identification of these photographs were made when the officers were in the process of investigation of the crime and at a time when the defendant was not under arrest.

■ The next bill of exception, labeled No. 6, also lacks substance. The trial judge correctly ruled, in sustaining the State's objection to defense counsel's question propounded to Deputy LaCour as to "whether he had refused to talk to defense counsel with regard to the case," that it was irrelevant and immaterial.

A mere reference to footnote 2 will readily disclose this question was obviously irrelevant and immaterial, and as stated hereinabove in resolving bill of exception No. 2, it is well settled jurisprudence of this state that all evidence in the possession of the district attorney or police is privileged with the exception of a written confession.

■ The seventh bill of exception relied upon by counsel is based upon the trial judge's denial of the motion in behalf of the defendant for additional counsel to be appointed to assist his appointed counsel. The basis of the bill is his appointed counsel had not been practicing at the bar for 5 years as required by Article 512 of the Code of Criminal Procedure for the defense of persons "charged with capital or serious crimes."

We think the trial judge in his per curiam correctly stated, "This is an exception without merit," pointing out, "The law of the State of Louisiana is that a person appointed to assist a defendant on the trial of the case must have five years experience only if the verdict could result in capital punishment. The law does

---

5. The cases of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, are in regard to the requirement of counsel at a post-indictment lineup; Thompson v. State, 451 P.2d 704, is a Nevada Supreme Court case involving the identification of the defendant from photographs while he was in custody.

not include capital punishment or 'serious crimes'." Moreover, our examination of the record convinces us of the correctness of the trial judge's further observation that "this defendant had very effective and able counsel. The defense presented by this attorney was above average * * *." Counsel's astuteness and ability was displayed throughout the trial, the defense being vigorously and diligently conducted. Also, it should be noted that the defendant had the benefit of all of the bills of exception reserved by his co-defendant's counsel under the express order of the judge and as is required by law, Code of Criminal Procedure, Article 842.

To this might be added that counsel was advised of his appointment to defend the accused on March 25, 1968 and appeared with the defendant at his arraignment on April 11, 1968. Thereafter, on April 22, 1968 he filed a motion for a bill of particulars, and it was not until the day before the case was set for trial that he filed the motion for additional counsel along with several other motions, (1) supplemental bill of particulars, (2) application for preliminary hearing, (3) motion for change of venue and (4) motion for severance. Obviously all these motions, if filed for any purpose other than to obtain a continuance, should have been filed and disposed of prior to the day before the trial.

■ The next alleged error complained of is to the trial judge's denial of defense motion for a mistrial on the ground that a member of the jury "came into contact with and was in the same room" with officers of the sheriff's department who had been subpoenaed to testify in the case.

We agree with the trial judge that this exception is without merit for the reasons as stated in his per curiam that "the jury in this case was not segregated as there was no requirement of law that it be segregated," and, "There is no charge here that the witness discussed the case with the juror or sought to influence the juror in any manner. The defendant does not argue that he was in any wise prejudiced * * *."

■ Bill of Exception No. 9 was reserved when the trial judge overruled counsel's objection to the competency of Danny Burns, minor son of the manager of Phil-A-Sak, who was at the scene of the robbery and made an in-court identification of the defendant while testifying.

The record reflects that prior to allowing the child to testify the trial judge examined him thoroughly to determine his competency, as did counsel for defendant, and we fully agree with the trial judge's conclusion as to his competency. At the time of the trial he testified that he had been promoted to the second grade and he

would be 7 years old on July 7, 1968, that being within less than two months from the time he was testifying. His answers to the questions asked by both the court and defense counsel were forthright and without hesitation; he stated he went to church regularly, was God-fearing, and understood he must tell the truth. In response to the question of what he thought was the purpose of his being there, he stated he was called to "talk about justice and rights, what's wrong and right," stating further he knew he was to tell about the robbery and how it happened. On direct and cross-examination he made an excellent witness, accurately recalling the persons who were in the store, the number of armed robbers that entered and the action that followed, including statements they made during the robbery, in which he was corroborated by other witnesses at the trial. He readily admitted any fact that he did not have actual knowledge of.

The final bill of exception relied upon as reserved by counsel declares the witness "Ruby Lewis, testified repeatedly, over objection of defense counsel, to the statement by her mother which was made out of the presence of the accused, Daniel Ezell Nails, Jr." claiming such evidence was hearsay.

In order to understand and properly dispose of this bill it was necessary that we read much of the record which disclosed as hereinabove related that Ruby Lewis lived next door to her mother and sister in a double house but that on the night of the robbery her sister, Doretha, who had loaned the defendants her car which they had used in the robbery, was at Ruby's house. It was in response to the district attorney's question to Ruby Lewis if she had talked to her mother on the night of the robbery, that she answered she had and was then asked to explain the circumstances, and she stated, "Oh, my mother knocked on the wall and asked my sister had she been anywhere?" Upon counsel's objection that this was hearsay the trial judge observed, "The hearsay rule is an objection to facts contained in a statement but the fact that a person hears something said is not hearsay, the proof of a statement being made rather than the proof of the truth of the statement are two distinct different things under the rule of evidence, * * * you detect words with your ears, if a person hears something * * * that is something that they detect with one of their senses." The court also permitted the state to ask the witness to complete the statement she heard her mother make to which she responded, "Because the police had been looking in the car." However, the trial judge sustained the objection to any further questions along this line and instructed the jury to disregard them and answers given.

We fully agree the testimony given by the witness in this case was not hearsay

but a fact she heard. But as the trial judge stated, even assuming that the statement was hearsay, it cannot be said that the defendant was prejudiced by the testimony as the record shows the same facts were testified to without objection by the defendant himself and corroborated by Ruby's mother.

For the reasons assigned the conviction and sentence are affirmed.

### On Application for Rehearing

■ Our attention has been called in an application for rehearing by the State in this case that we erroneously stated in footnote 1 that "Dorsey was also convicted, but has not appealed," when in fact the de-

fendant did appeal, as disclosed by the minutes. This error was obviously due to the fact that when the case was called for argument neither the appellant, Dorsey, nor his attorney appeared, nor was a brief filed on his behalf. Moreover, it is apt to observe that our study of the record reflects that his formal bills of exception were never approved as they were not signed by the trial judge.

Under such circumstances the bills must be considered abandoned, presenting nothing for our consideration except a determination of whether there is error patent on the face of the record,[1] of which, after careful examination, we find none. Accordingly, Dorsey's conviction and sentence are affirmed.

1. State v. Brown, 245 La. 442, 158 So.2d 605; State v. Wessinger, 245 La. 409, 158 So.2d 594; State v. Perry, 239 La. 131, 118 So.2d 130; State v. Ball, 234 La. 929, 102 So.2d 219; State v. Brumfield, 226 La. 103, 75 So.2d 23; State v. Carter, 226 La. 57, 74 So.2d 902; State v. Weaver, 222 La. 148, 62 So.2d 255; State v. DeSoto, 221 La. 624, 60 So.2d 65.