BARHAM, Justice.
Defendant Doris Lee was indicted for murder in violation of La. R.S. 14:30, by the Jefferson Parish Grand Jury. She pleaded “not guilty and not guilty by reason of insanity.” She was tried by a jury, found guilty, and sentenced to life imprisonment. She relies on twenty-six perfected bills of exceptions upon appeal to this Court. We find reversible error on the grounds presented in the bills numbered 14 and 14A, and we therefore preter-mit a discussion of the other bills.[1]
*878 The facts of the case, and those pertinent to bills 14 and 14A, are as follows: On the night of January 19, 1973, the defendant, Doris Lee, entered a lounge known as “Joe’s Corner” in Harvey, Louisiana, wherein she engaged in an argument with the victim, Edgar McKnight, with whom she had been living intermittently for two to three years. She left, returning later with a knife. The argument continued, and she chased McKnight outside the bar where she is alleged to have fatally stabbed him with the knife.
During the trial, a State witness, Mrs. Gloria Fredericks, testified concerning the events leading up to and the commission of the alleged crime; she claimed to have been an eyewitness to the actual killing of McKnight. During the course of her testimony, Mrs. Fredericks admitted that she had given a statement which would have been dated either later January 19 or early January 20, 1973 to the police while at the West Jefferson Hospital, to which she had ridden in the ambulance with the deceased and the defendant. She testified that in the statement given at the hospital, as well as in a subsequent statement given to the police at the police station later on January 20, she had said that she personally saw the defendant murder McKnight. Thus, she represented that her testimony in court about being an eyewitness was no different from her statements to the same effect to the police on January 20, 1973.[2] Following cross-examination, counsel for the defense requested that Mrs. Fredericks remain so that she could be recalled later. The court recessed for lunch, but stated that the defense could recall Mrs. Fredericks after the recess.
When the afternoon session of court began, defendant sought to recall Gloria Fredericks. The court asked the reason for the recall and the defense replied that it had new evidence that Mrs. Fredericks’ prior statement to the police was inconsistent with her testimony in court regarding’ the crucial issue of whether she was in fact an eyewitness to the alleged murder. Out of the presence of the jury, the defense attorney informed the court that at the time that the incident occurred and shortly thereafter he had spoken to several of the deputies, one of whom had advised him that there were no eyewitnesses to the crime. He further alleged that he had knowledge acquired on the day of the trial, that the district attorney possessed a statement reduced to writing, made on or subsequent to January 20, 1973, other than the oral statements of witnesses of which counsel may have been apprised from the deputies he had questioned in the past, which contained no reference to her having been an eyewitness to the actual killing *879 of McKnight, contrary to her testimony in court. The defense attorney argued that he was entitled to view the statement because it was favorable to his client, and because it was inconsistent with the witness’ subsequent testimony. The court denied both of the defendant’s motions, and the defendant was thus not allowed to recall the witness or to have the statement produced.
Later during the trial the defense called Deputy Sheriff Curtis Denton who, on January 20, 1973, was assigned to investigate the McKnight murder. He testified that in the course of his investigation he had taken a statement from Gloria Freder-icks, and she had not claimed to have witnessed the killing of Edgar McKnight, a direct contradiction of her prior testimony in the courtroom. On cross-examination, he further testified that from the statements he had taken, it had been his opinion that no one had seen the actual killing.
Bills 14 and 14A were reserved to the denial for use during cross-examination of the prior inconsistent statement of a State witness and the refusal of the court to permit recall of the witness for purposes of impeachment. We hold that the trial court committed reversible error in both respects.
In State v. Nails, 255 La. 1070, 234 So.2d 184 (1970), we set forth the prerequisites with which a defendant must comply in order to be entitled to the production of a prior written statement of a State witness. Ordinarily, the defendant is not entitled to such evidence; however, if a proper foundation for impeachment has been laid, i. e., the witness has denied making the statement or defense counsel has shown that one or more of the material statements in the police report are contrary to the sworn testimony of the witness, then the defendant is entitled to production of the statement for use in impeaching the witness. See also State v. Whitfield, 253 La. 679, 219 So.2d 493 (1969); State v. Martin, 250 La. 705, 198 So.2d 897 (1967). In the instant case, although the meeting of either of the Nails criteria would have been sufficient to compel production of the statement, both in fact have been met, and refusal on the part of the trial court to order the production was error.
Our holding in State v. Babin, Docket No. 54,608 (La.1975), is easily distinguishable because in that case the error, though acknowledged as error, was held to fall short of reversible error for two reasons, both of which are absent in the instant case. First, in Babin, the discrepancy between the trial testimony and the inconsistent pre-trial statement was determined not to concern a “critical point at issue” or to necessarily indicate a difference of a substantively significant nature between the pre-trial statement and the trial testimony; to the contrary, in the instant case, Mrs. Fredericks was the only person alleging to have actually witnessed the murder, and if this allegation was at variance with her statement to the police immediately following the incident, approximately a year earlier, such an inconsistency would be very critical indeed, and clearly would be of a substantively significant nature. Secondly, in Babin the witness distinctly admitted the conflict between his prior statement and his testimony, and therefore the statement itself could not be produced as evidence under La. R.S. 15:493 which permits impeachment by independent proof of the prior inconsistent statement only “if the witness does not distinctly admit making such statement;” no such admission was present in the instant case since the witness in fact denied any inconsistencies. Hence, the error in the instant case was reversible, not falling within the Babin decision.
Since we determine that the defendant had the right to view the prior inconsistent statement for the purpose of impeaching the witness, and that the failure of the trial judge to order the production of the statement was reversible error, it follows that the trial judge also erred in denying the motion to recall the witness in order that the statement could actually be *880 used to impeach her. This Court held in State v. Cordier, 297 So.2d 181 (La.1974):
“It is generally stated that the matter of permitting recross-examination is in the sound discretion of the trial judge and in the absence of some showing of an abuse of that discretion, and resulting prejudice, his ruling will not be disturbed on appeal. State v. Shirley, 256 La. 665, 237 So.2d 676 (1970), cert. den., 401 U.S. 926, 91 S.Ct. 891, 27 L.Ed.2d 829; State v. Byrd, 214 La. 713, 38 So. 2d 395 (1949); State v. Fernandez, 157 La. 149, 102 So. 186 (1924).”
We find both abuse of discretion and prejudice resulting from the trial judge’s ruling in the instant case, and accordingly, we reverse that ruling.
Reversed and remanded for a new trial consistent with the opinions expressed herein.
SANDERS, C. J., dissents for the reasons assigned by Mr. Justice MARCUS.
SUMMERS, J., dissents and assigns reasons.
MARCUS, J., dissents and assigns reasons.

. We note that in Bills of Exceptions Numbers 4 and 4A the defendant urges error on the part of the trial court in failing to quash her indictment, based on the fact that the grand jury which returned the indictment against her contained no women, and that the entire General Jury Venire for 1973 contained only seven women pursuant to the former Louisiana procedure excluding women from such duties unless they voluntarily and affirmatively applied for service.
In Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), the Supreme Court struck down the Louisiana procedures excluding women from jury service unless they volunteered, on the grounds that such a procedure violated the Sixth and Fourteenth Amendments right of a defendant to a trial by an impartial jury. The Taylor decision was held to be prospective only in the subsequent decision of Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed. 2d 790 (1975), and that ruling was applied by this Court in State v. Hester, 309 So.2d 321 (La.1975). However, Taylor, Daniel, and Rester all involved complaints by male defendants who were urging denials of Due Process.
A female defendant, such as the defendant in the instant case, has standing to claim a denial of Equal Protection as well when she has been indicted or tried by a jury from *878 which women have been excluded. In Devall v. Louisiana, 420 U.S. 903, 95 S.Ct. 820, 42 L.Ed.2d 832 (1975), the Supreme Court dismissed the appeals of Jimmy and Charlotte Devall (a male and a female) for want of a substantial federal question, citing Daniel. The Court did not specifically address itself to the Equal Protection issue, but we assume from their dismissal of Charlotte Devall’s appeal that Taylor does not apply retroactively to females either, under the ruling in Daniel.
This writer and other members of this Court have long been of the opinion that exclusion of women from juries in trials of women defendants is a violation of the Equal Protection clause. However, we are constrained to abide by the mandate of the United States Supreme Court, and we therefore can find no merit in these two bills.

. The actual testimony on this point was as follows:
“Q In your original statement to the police, isn’t it a fact that you didn’t say anything about seeing Doris kill that man, that you said you just saw her with a knife?
“A I spoke, I told it. I told it, I told everything.
“Q In your original statement?
“A Yes, I told them I seen her kill him.
“Q Where did you give this statement?
“A I gave it at West Jefferson, but I came down here and gave another .... After they asked me questions up there, they brought me down to the lockup for another statement.
‘‘Q And you are positive that you witnessed Doris stabbing Edgar McKnight?
“A I seen Doris stab Edgar McKnight.” (Tr. Vol. Ill, pp. 83, 84)