366 So.2d 1375 (1978)
STATE of Louisiana
v.
Claude J. BREAUX.
No. 62730.
Supreme Court of Louisiana.
December 15, 1978.
*1376 A. J. Boudreaux, Indigent Defender Board, Kenner, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., James D. Maxwell, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
*1377 CALOGERO, Justice.
Defendant was charged by bill of information with three counts of aggravated crime against nature,[1] in violation of R.S. 14.89.1, and convicted on all counts after a bench trial. The trial court imposed six year sentences on each count, directing that the sentences be served concurrently. Defendant relies upon four arguments, encompassing eight assignments of error, for a reversal of his conviction and sentence. Because the remaining thirteen assignments appearing in the record have been neither briefed nor argued, we consider them abandoned. State v. Richey, 364 So.2d 566 (La.1978) No. 61,990.

ARGUMENT NO. 1

ASSIGNMENTS OF ERROR NOS. 2, 4, 9 AND 13
These assignments of error stem from the mid-trial amendment of the bill of information, which had charged the commission of the offenses "on or about January 25, 1976" when trial commenced. On the third day of trial, the trial court allowed the state to amend the three counts of the information to charge that the offenses were committed between the dates of January 18, 1976 and January 27, 1976. Even prior to this May 4, 1976 amendment, during the state's opening statement and during examination of witnesses, the defense complained of the state's use of the phrase "on or about January 25" because the imprecision purportedly rendered impossible the preparation of an adequate alibi defense. Subsequent to the amendment, which set forth a ten day time span within which the crimes were alleged to have been committed, the defense sought a continuance urging that the amendment materially and prejudicially affected the defense planned (which included an alibi for the date of January 25, 1976) and claiming that defendant was entitled to a continuance in accordance with the provisions of Article 489 of the Code of Criminal Procedure.[2]
Defendant complains in brief of the denial of the continuance sought as a result of the mid-trial amendment of the bill of information. However, the record reflects that the trial court granted a "continuance" as mandated by article 489, and trial resumed two days later, at which time defense sought a mistrial, claiming that the defendant's mental condition so hampered efforts to prepare a defense with respect to all time periods covered by the amended bill that defense preparation was incomplete. Counsel for Breaux complained that he had determined the witnesses he needed and would be prepared to present some defense witnesses but that he had not yet interviewed them. The court denied the mistrial motion, and the defense objected to the ruling. The trial judge stated for the record that defense counsel had telephoned on the previous afternoon, at which time he indicated to the judge that he thought he had all the witnesses needed but related that he perhaps would need instanter subpoenas when the trial resumed the next morning. No instanter subpoenas were requested, the judge observed.
In view of the fact that the trial court granted a continuance, the complaint that the court erred in denying a continuance is wholly lacking in merit. It is significant to note that while the defense moved for a mistrial on the morning that trial resumed, *1378 urging inability to complete defense preparations, at no time was the motion for continuance based on the amendment re-urged, nor was additional time to further trial preparation sought. This argument lacks merit.

ARGUMENT NO. 2

ASSIGNMENTS OF ERROR NOS. 11 AND 16
During the trial testimony of the oldest victim of the crimes, age twelve at the time of trial, the child was asked on cross-examination how he had identified the defendant and whether Mr. Muller (a detective in the juvenile division) had "shown" the child the arrested defendant. The child responded to the inquiries by stating, "He gave me some pictures to look at." Defense counsel queried, "He did?" and the child then stated, "Uh-huh. Some lady gave me some pictures to look at." At this point the state objected to the defense line of questioning, noting that the witness had made an in-court identification of the defendant, and urging that the defense had been apprised that the state was not using any photographic line-up in connection with its proof of its case. The defense argued that in light of representations of a state's witness (Muller) at a pre-trial hearing on the motion to suppress identification that there was no photographic line-up exhibited to the victims, the revelation that the same witness exhibited photographs to one of the victims warranted a mistrial.
The court's further interrogation of the young witness indicated that although he had selected one of the photographs, it appeared that perhaps the child did not know who the selected photograph depicted because when asked, "And who was the photograph of that you picked out?" the boy responded, "He didn't tell me." The trial court examined the testimony of Detective Muller given at the motion to suppress hearing and ascertained that Muller only represented that he had no knowledge of any line-up or photographic identification procedure; there was no unequivocal representation that there had been no such procedure. When the defense urged that the testimony of the young victim now revealed that Muller had, indeed, exhibited photographs and that the detective's misrepresentation at the suppression hearing precluded defense exploration of the propriety of the identification procedure, the court announced that the young witness' testimony indicated there was no photographic identification made. This conclusion was based on the testimony indicating the child did not know who it was that he identified. The court opined that the identification by the child of the defendant was "from his own information." Based on its appreciation of the evidence, the trial court denied the mistrial sought by the defendant.
Much later, during the trial testimony of Detective Muller, defense sought a response on cross-examination to its inquiry of whether the officer had shown the victims photographs. The defense received a negative response and thereupon unsuccessfully renewed its motion for mistrial, based on the earlier contrary testimony of the young victim. The denial of the two motions for mistrial is urged by this argument to warrant reversal.
Arguing this issue in brief, the defense concedes its failure to establish that the display of the photographs was impermissibly suggestive but claims that its failure stemmed from the representation at the suppression hearing that no such identification procedure was employed. It is urged that the court reversibly errs when it prohibits the defendant from eliciting circumstances surrounding the out-of-court identification procedure.
Contrary to the conclusion of the trial court, we deem it probable that the young victim did identify the defendant upon viewing the photographs displayed to him, for his disclosure that he viewed photographs was in response to this inquiry: ". . . how did you identify Mr. Breaux? Did you go up to the Gretna Courthouse and did Mr. Muller show you Mr. Breaux?" However, a review of the record reveals that the young witness continually *1379 equivocated with regard to the identity of the person who displayed the photographs to him, sometimes stating that it was Detective Muller, once claiming that it was a lady who displayed the pictures, and another time stating that he did not believe it was Muller who presented the photographs. At trial Detective Muller again denied that he had conducted any such display.
Notwithstanding the defense burden of proving impermissible taint in connection with a pre-trial identification procedure, Breaux's counsel elected to call only two of the three victims to testify at the suppression hearing, failing to call the third victim, whose trial testimony indicated a pre-trial photographic identification. Thus, defense failed to adequately avail itself of the opportunity to show suggestiveness or unfairness at the hearing and has not otherwise established that the identification was impermissibly tainted.
A somewhat analogous situation was considered in State v. Judson, 329 So.2d 742 (La.1976). The victim of the crime in that case made a photographic identification of Judson which led to his arrest. Subsequently, a line-up was held, and again the victim positively identified the defendant. At a hearing on a motion to suppress identification it was revealed that the victim had once been shown a family album containing the defendant's pictures. At the hearing the victim testified that he was unsure whether the album was displayed prior to the line-up but when pressured stated that he "guessed" the display took place before the line-up. At a proceeding subsequent to the suppression hearing, the victim testified that he was sure the album display took place after the line-up. At trial, the victim positively identified the defendant. On appeal Judson claimed the display took place before the line-up, thus tainting it and the subsequent in-court identification. The Court rejected Judson's claims, noting that the burden of proving impermissible taint was his and finding that he failed to prove his assertion that the victim viewed the album before the line-up.
In the instant case, it is the defendant's assertion that Detective Muller conducted a photographic display. This claim he has failed to prove. Moreover, even if we were to assume that whatever photographic display conducted was suggestive or unfair, we are of the opinion that the young victim's in-court identification had a source independent of any photographic identification. On the day of the commission of the offense, the defendant and the victims were in a park when the defendant beckoned the boys into a shed. This young witness testified that the day was sunny, the time was just before dark, and the visibility was adequate. There is no indication that the victim's sight or view was in any way diminished or impaired; his in-court identification of defendant was unequivocal. Therefore, the in-court identification does not violate defendant's due process rights. State v. Cass, 356 So.2d 396 (La.1978). These assignments of error are without merit.

ARGUMENT NO. 3

ASSIGNMENT OF ERROR NO. 14
In its formal assignment of error, the defense urges that the trial court erred in sustaining a state objection to cross-examination of Detective Muller regarding the circumstances surrounding the taking of a statement from the defendant. Examination of the portion of the record designated does not reveal an objection as described in the assignment and an inspection of the cross-examination of Detective Muller reveals that defense counsel was allowed to inquire about the statement made by the defendant without objection by the state or other interference. The witness simply testified that Breaux related that he worked back of the gym with children all the time and would not "do anything like this."
There was no ruling which curtailed the defense inquiry regarding the taking of Breaux's statement. This assignment of error has no merit.

*1380 ARGUMENT NO. 4

ASSIGNMENT OF ERROR NO. 15
During cross-examination of Detective Muller defense counsel elicited testimony that in giving his account of the offenses the youngest of the three victims did not report to the officer that he had witnessed the crimes perpetrated upon the other boys. When the officer was asked if the middle child had said he personally witnessed the crimes committed with the other boys, he answered: "Not that I recall." The defense then moved for production of the statements made to Detective Muller by the three victims, arguing that there were inconsistencies shown between the trial testimony of the victims and their statements, entitling it to the pre-trial statements of the victims who had earlier testified at trial. In support of its request for production the defense argues in brief that the case of State v. Nails, 255 La. 1070, 234 So.2d 184 (1970) sets forth the rule that defense is entitled to production of a witness' pre-trial statements for impeachment purposes when defense counsel has shown that a material statement in the document is contrary to the witness' sworn testimony.
On direct examination the youngest victim testified at trial that he had seen the crime committed upon his two companions but he reported that he had not related this to Detective Muller when he interviewed him. Defense contends that this discrepancy between the pre-trial statement and the testimony of the young victim meets the requirement of a showing of a contrary material statement in a police report, requiring the court to grant the defense request for production of the statements.
The state argues in brief that there was no material discrepancy such as would require production of the victims' statements.
In State v. Lovett, 359 So.2d 163 (La. 1978), a witness, Jensen, had testified that defendant instructed him to kill a man named Landry, a member of a multicraft labor organization. Defense established that in a pre-trial statement given to the sheriff's department, Jensen had not related this instruction by the defendant since he did not think of it when he gave his statement. Defense sought production of the prior statement and the court denied it. In discussing the issue this Court recognized that Lovett's counsel could require production upon a showing that a material statement in the document is contrary to the sworn testimony, in accordance with the rule set forth in State v. Nails, supra. Jensen gave a pre-trial statement devoid of the direct accusation against Lovett which he made at trial. This Court approved the trial court's refusal to order production on the premise that there existed no genuine conflict between the statement and the trial testimony.[3]
Applying the rationale of the Lovett case, we must determine that there was no genuine conflict with regard to the witnessing of defendant's crimes against the other youths between this youngest victim's testimony and any facts related in his prior statement. Like the witness in Lovett, this child admitted that his trial testimony differed from his statement to Muller at least with respect to the issue of whether he witnessed the other crimes. Therefore, a denial of production based on the asserted discrepancies between the statement of this youngest *1381 victim and his trial testimony was not incorrect.
After the trial court denied production of the prior statements of the three young victims sought on the basis of inconsistencies between those statements and the victims' trial testimony, it was established through defense's cross-examination of Detective Muller that the oldest of the three victims had claimed to have witnessed the crimes committed upon his companions when he was interviewed by the detective. This young victim had testified at trial that he had not witnessed the commission of the crimes by defendant upon his playmates.
While Detective Muller's revelation of the youngster's claim would appear to entitle defense to production of his statement, in view of his trial testimony that he did not view the commission of the crimes upon his friends, this circumstance does not entitle defendant to relief. The record reveals that defense counsel failed to renew his request for production of the victims' pre-trial statements. Thus, the fact that the defense appears to have been entitled to the production of this oldest child's statement, upon demand therefor, is of no avail.

Decree
For the foregoing reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED.
DENNIS, J., concurs in affirmance of the conviction and sentence and assigns reasons.
DENNIS, Justice, concurring.
I respectfully concur in the affirmance of the conviction and sentence of the defendant, but I would remand the case to the trial court for a hearing to determine if exculpatory evidence had been withheld from the defendant. See, United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), and State v. May, 339 So.2d 764 (La.1976).
NOTES
[1] Each count charged a single offense against an individual different from those named in the other two counts. All three counts alleged the victim was under seventeen and the defendant over seventeen.
[2] Code of Criminal Procedure article 489 provides:

"If it is shown, on motion of the defendant, that the defendant has been prejudiced in his defense on the merits by the defect, imperfection, omission, uncertainty, or variance, with respect to which an amendment is made, the court shall grant a continuance for a reasonable time. In determining whether the defendant has been prejudiced in his defense upon the merits, the court shall consider all the circumstances of the case and the entire course of the prosecution. If it becomes necessary to discharge the original jury from further consideration of the case, the trial before a new jury will not constitute double jeopardy."
[3] In Lovett, the author dissented, expressing a view contrary to the majority's determination that there was no genuine conflict. While I have some reservations regarding the issue in this case I nonetheless find it distinguishable from Lovett. In determining to dissent in Lovett, I considered that the issue involved a mature adult witness who, during his statement to police, desisted from saying that to which he testified under oath at trialthat Lovett instructed him to kill Landry. Under these circumstances, the argument that there existed no genuine conflict should be unavailing and Lovett's counsel should have been supplied Jensen's statement.

The principle involved in the instant case may be akin to that presented in Lovett, but in this instance a considerably stronger argument may be made that because of the circumstances there exists here no genuine conflict. In any event, I need not decide if this is in my view an error of reversible proportions, for the holding in Lovett binds me and all other members of this Court for as long as it is the view of the majority.