377 So.2d 299 (1979)
STATE of Louisiana
v.
William Joseph IRELAND.
No. 64894.
Supreme Court of Louisiana.
November 12, 1979.
Rehearing Denied December 13, 1979.
*300 Nicholas F. Larocca, Jr., Lippman, Mahfouz & Martin, Morgan City, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Knowles M. Tucker, Dist. Atty., Edward M. Leonard, Jr., Asst. Dist. Atty., for plaintiff-appellee.
LANDRY, Justice Ad Hoc.
From a unanimous 12 man jury verdict of guilty as charged, of armed robbery (La. R.S. 14:64), committed September 20, 1978, defendant, William Joseph Ireland, appeals his conviction and sentence of 65 years at hard labor without benefit of probation, pardon, parole or suspension of sentence. The appeal raises five assignments of error, none of which warrant reversal and only two of which require detailed discussion.
On September 20, 1978, at approximately 4:30 P.M. the St. Mary Parish Sheriff's Office received a telephone call from Monica Buquet, a clerk at the Shoe Town Store located on Highway 90, in Morgan City, Louisiana, reporting that the store had just been robbed at gun point.
Ms Buquet described the gunman, (who had just left the establishment), as a white male, approximately six feet tall, in his mid thirties, and having a pock-marked or pitted complexion. She reported the felon as wearing a blue and white checkered shirt, blue jeans and a white sailor cap. She also reported that the robber was armed with a pistol which she believed to have white handle grips, and that he left the scene in a four door beige over green automobile that appeared to be old and dirty and bearing a white out of state license with red and blue lettering. She added that the felon had just left the store's parking lot where she lost visual contact with him.
The description of the felon and the nature of the alleged offense together with a description of the vehicle, was immediately broadcast on the police radio by the sheriff's dispatcher. At that time, Detective Alcide Gros, accompanied by Deputy Maria Williams, was patrolling west on Highway 90 in an unmarked police car, west of the scene of the robbery. The officers heard only the last portion of the transmission and Gros requested the dispatcher to repeat *301 the message. The dispatcher repeated the details of the alleged crime but in the re-broadcast the color of the vehicle was reversed and it was described as being green over beige.
Immediately thereafter, Deputy Williams looked to her right and saw in the westbound lane adjacent to the police car, an automobile being driven by defendant. Both the car and driver fit the description the officers had just heard.
The officers allowed defendant to get ahead of them and then followed him until he drove to a nearby shopping center and parked his car. Officer Gros parked the police vehicle a short distance away and, as defendant walked away from his car, the officers stopped Ireland, identified themselves as officers and directed defendant to place his hands on his automobile. Gros then patted defendant down for a weapon and found a pistol hidden in the suspect's waistband beneath the shirt defendant was wearing outside his trousers.
Defendant was then arrested by Deputy Duval Arthur who had arrived on the scene and who immediately took defendant to the Shoe Town store where defendant was identified by Ms Buquet as the one who had robbed her. Defendant was then incarcerated and about two hours later confessed to the crime.
Upon learning that the vehicle used in the robbery actually belonged to a friend of defendant's, who was in jail, and upon discovering that the trunk lid lock on the vehicle was punched through, Deputy Williams drove the vehicle from the shopping center to the Sheriff's parking lot adjacent to the Parish courthouse where the vehicle was impounded and its contents inventoried.

Assignments of Error Numbers 1 and 2
These assignments challenge the trial court's refusal to suppress defendant's confession and certain items of evidence on the ground that they were obtained in violation of defendant's constitutional rights. It is urged that the confession was not shown to have been voluntarily made after adequate warning as to his Miranda rights. It is also urged that the warrantless arrest and search of defendant's person as well as the search of the vehicle were invalid for lack of probable cause.
Our review of the record discloses these assignments to be totally lacking in merit. The record reveals that defendant was in fact read his Miranda rights and with full knowledge and understanding thereof, signed a waiver which appears of record. We also find that the circumstances shown herein constituted ample probable cause for defendant's arrest and search of his person and vehicle without a warrant.

Assignment of Error Number 3
This assignment addresses the trial court's failure to declare a mistrial because Ms Buquet, the only eye witness to the crime, was observed talking to a juror during a lunch recess. The incident was brought to the court's attention by an officer of the court and a full hearing of the matter was held out of the presence of the jury. The record shows that Ms Buquet had lunch at a small sandwich shop near the parish courthouse, and while there she sat at a table in the company of juror, Joe Taylor.
Ms Buquet testified that she sat at a table with Taylor, whom she had never met before. Another person, also a juror, whom she did not know, sat at the same table for a brief period. She stated that she did not discuss the case or trial with anyone while having lunch because she well recalled the judge's admonition against such conduct. She explained that the table where she sat was the only one available and that the other juror (whom she could describe only as having long black hair), sat only long enough to eat and then left.
Juror Taylor acknowledged that he sat at the table with the witness but hardly talked to her at all. He added that he spoke mostly with Ms Buquet's friend, Sandy Raino who was present, and who was a high school classmate of his. Taylor testified that he did not discuss the case with anyone.
*302 Lee Navarro, bailiff, testified he was present in the cafe and heard Ms Buquet and others talking at a nearby table. While he did not overhear everything said, he testified that he heard no discussion of the case.
On review of the record we conclude that this matter falls within the purview of State v. Dotson, 260 La. 471, 256 So.2d 594 (La.1971) in which we stated:
"* * * The majority rule is that communication between a juror and a witness in a criminal trial without a showing that the defendant was prejudiced furnishes no ground for upsetting a conviction. State v. Nails, 255 La. 1070, 234 So.2d 184; State v. Johnson, 149 La. 922, 90 So. 257; State v. Miles (Mo.), 364 S.W.2d 532, 9 A.L.R.3d 1266; Annot., Jurors-Communications with Witnesses, 9 A.L.R.3d 1275, 1280-1282.
In State v. Johnson, supra, this Court aligned itself with the majority rule and upheld the conviction after a juror had eaten lunch with a State witness. * *
* * * * * *
In the present case, the testimony establishes only a conversation among four people, including the juror, seated at a restaurant table. There is no showing that the juror or other diners discussed the case.
In his Per Curiam, the trial judge states:
`The jury had not yet been sequestered and defendant did not charge that the witness had discussed the case with the juror or had sought to influence him in any manner. The mere fact that the witness and the juror ate lunch at the same table in the only restaurant in Benton is not grounds for a mistrial.'
The ruling of the trial judge as to the misconduct of a juror is entitled to great weight. See State v. Fike, 129 La. 663, 56 So. 630; Marr's Criminal Jurisprudence of Louisiana, § 467 p. 714 (1923).
Under the circumstances, this Court cannot presume prejudice. See LSA-C.Cr.P. Art. 921; State v. Nails, supra. While innocent contact of a juror with a witness is to be avoided, when such contact does occur it does not always vitiate the conviction. In our opinion, the trial judge correctly denied the mistrial. The conviction should stand."
We considered this assignment in detail principally because the witness involved was the sole eye witness to the alleged crime. On further reflection, however, we see no valid reason why this circumstance should alter the rule in Dotson, above. We deem it illogical to conclude that such a circumstance should create an unrebuttable presumption that a defendant's rights were prejudiced.
In this instance the record establishes overwhelmingly that the witness and jurors involved did not violate the court's instruction not to discuss the case. We find no error in the trial court's conclusion that defendant's rights were not prejudiced in any manner.
This assignment is without merit.

Assignment of Error Number 4
This assignment challenges the trial court's refusal to replace Taylor with an alternate juror. Such a substitution would have been called for only if the trial court found prejudice. Since we affirm the ruling that there was no prejudice, this assignment is of no merit.

Assignment of Error Number 5
This assignment alleges excessive sentencing amounting to cruel and unusual punishment, in violation of defendant's constitutional rights, resulting from the sentence of imprisonment at hard labor for 65 years, without benefit of probation, pardon, parole or suspension of sentence. La.R.S. 14:64 provides that the offense of armed robbery is punishable by imprisonment at hard labor for not less than five years and not more than 99 years, without benefit of parole, probation or suspension of sentence. The sentencing provision of La.R.S. 14:64 has been held to be not in violation of the constitutional right against imposition of cruel and unusual punishment. State v. Williams, La., 341 So.2d 370 (1976); State v. Victorian, La., 332 So.2d 220 (1976).
*303 The record reveals that the trial judge meticulously followed the sentencing guidelines prescribed in La.C.Cr.P. Article 894.1. In imposing sentence he weighed the facts of the instant case and considered defendant's past criminal record. Defendant was first convicted of crime (burglary) in 1962. His record includes five additional felony convictions or pleas of guilty to felony charges including burglary, armed robbery, kidnapping and forgery. The record establishes beyond doubt that defendant is a habitual criminal. Under the circumstances the sentence imposed does not constitute cruel or unusual punishment.
The conviction and sentence are affirmed.