399 So.2d 201 (1981)
STATE of Louisiana
v.
Lloyd DAVENPORT.
No. 80-KA-2359.
Supreme Court of Louisiana.
May 18, 1981.
Rehearing Denied June 22, 1981.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul Carmouche, Dist. Atty., Billy J. Guin, Jr., Asst. Dist. Atty., for plaintiff-appellee.
Stephen A. Glassell, Shreveport, for defendant-appellant.
*202 SWIFT, Justice Ad Hoc.[*]
Lloyd Davenport was charged with two counts of attempted first degree murder in violation of La.R.S. 14:27 and 30. After trial the jury returned a verdict of guilty of attempted manslaughter on both. The defendant was sentenced to serve seven and one-half years at hard labor for each offense, the sentences to run concurrently. He now appeals the convictions and sentences to this court, urging four of seven assignments of error.
Defendant Davenport encountered the two victims (a mother and her daughter) at a softball game on Sunday, May 20, 1979. He had been drinking and seems to have made an attempt to pick up the younger woman. Davenport then became involved in a heated dispute with both her and the mother. At some point the defendant went to his truck and got a .32 caliber pistol and returned to the scene of the argument. Ms. Pennywell, the mother, apparently grabbed a baseball bat. There was conflicting testimony on the subject between state and defense witnesses, but defendant stated she swung at him with the bat. He then shot her at point blank range in the side of her head and shot the daughter in the breast. Both victims survived, but the mother received permanent injuries. The defendant's contention that he acted in self defense because Ms. Pennywell was beating him with a baseball bat was rejected by the jury after hearing seven eyewitnesses, both victims and the defendant testify.
ASSIGNMENTS OF ERROR NOS. 2 AND 3
In these assignments the defendant urges the trial court erred in denying his counsel the right to read and examine the pretrial recorded statements of four state witnesses and to use them in cross examination of each witness; and alternatively in failing to conduct an in camera inspection of these statements.
The testimony of the four witnesses to the incident varied somewhat. However, all four of these persons stated that Ms. Pennywell did not hit the defendant with the bat or at least they did not see her hit him.
The defendant's position is that the issue of whether or not he was struck with the bat by Ms. Pennywell is of vital importance in regard to his plea of self defense. Therefore, the pretrial statements of these witnesses should be produced for him to see if there are any inconsistencies therein with their testimony on this issue or at least the trial judge should examine the statements in camera and determine if they contain any material inconsistencies or information of an exculpatory nature.
The state's position is that the trial judge properly refused defendant's request for production because it was not shown that any inconsistency existed between the statements and the witnesses' testimony. It relies on the following expression of this court in State v. Whitfield, 253 La. 679, 219 So.2d 493, 496 (La.1969):
"The jurisprudence is now well settled that the State is not required to permit inspection of a police report or a prior statement for use in cross-examination of a State witness for impeachment purposes unless the accused first shows that the report indicates that one or more of the material statements therein are contrary to the sworn testimony of the witness."
The same rule was applied in State v. Nails, 255 La. 1070, 234 So.2d 184 (La.1970), State v. Lovett, 359 So.2d 163 (La.1978), and in State v. Breaux, 366 So.2d 1375 (La.1978).
This court has also held that simply on a general request a trial judge is not required to conduct an in camera inspection of the district attorney's entire file to determine whether or not it contained any evidence favorable to the defendant. State v. Ranker, 263 La. 914, 269 So.2d 812 (1972). Also, in State v. Robinson, 342 So.2d 183 (La. 1977), *203 it was held that a defendant was not entitled to an in camera inspection by the trial judge where the state has denied possession of the specific information requested and the defendant makes no showing to the contrary.
In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), of course, the United States Supreme Court has held that upon request the state must produce evidence that is favorable to the accused where it is material to guilt or punishment. The Brady rule has been expanded to include evidence which impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); State v. Roussel, 381 So.2d 796 (La.1980); State v. Curtis, 384 So.2d 396 (La.1980); State v. Landry, 388 So.2d 699 (La.1980).
In United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) the United States Supreme Court stated:
"In Brady the request was specific. It gave the prosecutor notice of exactly what the defense desired. Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." [Emphasis added.]
Following Agurs, this court in State v. May, 339 So.2d 764 (La.1976), remanded the case to the district court for an in camera inspection of a letter allegedly written by a co-indictee which the accused specifically requested, claiming that it contained a statement that he had not participated in the crime. The trial judge was instructed to determine whether the letter existed; if so whether there was a substantial basis for defendant's claim that it was material to his guilt; and also whether in the context of the entire record it would create a reasonable doubt as to defendant's guilt.
In State v. Toledano, 391 So.2d 817 (La. 1980), the case was remanded to the trial court for inspection by the judge of the record of a state witness' juvenile adjudications and to decide whether the impeachment value thereof outweighed the witness' statutory interest in the confidentiality of such record.
The use of an in camera inspection by the trial judge (after which he had denied production for cross-examination of a requested written statement of a state witness on the basis that it would not have created a reasonable doubt as to guilt of the defendant that did not otherwise exist), was approved by this court in State v. Sylvester, 388 So.2d 1155 (La.1980). Said the court:
"Use of an in camera examination by the trial court to determine whether a witness' prior statement is inconsistent with his trial testimony so as to entitle the defense to access to the statement was also suggested in the concurring opinion in State v. Babin, 319 So.2d 367 (1975). This procedure provides a method for determining materiality based on an independent judicial decision, rather than on an assertion by a state official charged with the duty of prosecuting. At the same time this procedure deters any prosecutor who would deliberately withhold arguably material evidence in the hope that a reviewing court would hold the evidence immaterial or the suppression harmless. Finally, this procedure, by which the trial court exercises discretion in determining materiality, provides a method of efficient review of that decision by direct appeal and avoids the less efficient post-conviction applications and hearings related to alleged constitutional errors not contained in the record."
In the present case specific requests for production of the statements have been made by the defendant. One was presented to the judge on his order, but it was later returned by him to the state. It is not clear *204 from the record whether or not he read it. His final ruling was that he would continue to deny the requests for an in camera inspection "... unless there is some indication of gross injustice being brought about, and if that is the situation, I think that you, as a defense attorney, ought to bring it out..." The state contends there are no material inconsistencies or exculpatory information in the statements in its file.[1] Defendant has made no showing of any such inconsistencies or Brady information in the statements, but, of course, he has no knowledge of the contents thereof.
If in such a situation the district attorney is wrong (and we say this without casting any aspersions whatsoever on the prosecutors of this state, because it is usually most difficult to determine whether or not inconsistencies or omitted information in witnesses' statements are material to the defendant's guilt), certainly the interests of justice would best be served by obtaining a judicial decision in this regard during the trial rather than later through post-conviction remedies. While such procedure will interrupt the trial and will be time consuming, we believe the added burden to our busy trial judges will be outweighed by the efficiency in the administration of justice.
We therefore conclude that in this case the trial judge should have made an in camera inspection for material inconsistencies and Brady information in the requested written or recorded statements of the state witnesses prior to their cross-examination.
The existence of inconsistencies or information favorable to the accused in such statements alone, however, does not constitute a denial of the defendant's constitutional Brady rights. It will also have to be determined whether in this instance such evidence, if it exists, is material to the guilt or punishment of the defendant so that the deprivation thereof denied him a fair trial.
Accordingly, we will remand the case to the trial court for it to determine: (1) whether or not the written or recorded statements obtained by the state from its four witnesses prior to the trial contained inconsistencies with their trial testimony or other evidence favorable to the accused; and, if so, (2) whether such evidence is material to defendant's guilt or punishment, employing the standard applicable on the basis of the totality of the facts and circumstances of this case as stated in Sylvester, supra. In the event of an affirmative determination of both by the trial court, a new trial will be required. However, upon a contrary finding the conviction will be affirmed. The proceedings and determination of the trial court, of course, will be subject to review on appeal.
ASSIGNMENTS OF ERROR NOS. 6 AND 7
In Assignment No. 6 the defendant asserts that the sentence imposed was excessive. In No. 7 he contends the trial court erred in concluding he did not have legal authority to impose a probated sentence with a special condition for monthly payments to the victims as restitution for their damages.
In sentencing the defendant the judge stated that he had considered probation with such a condition and felt it "would be a more appropriate sentence, but after discussing this possibility with your attorney and with the District Attorney, there are some very practical reasons why this kind of sentence cannot be given." He went on to say that the defendant must be punished "first to act as a general deterrence for others who might be inclined to commit this type of criminal offense, and second, so that both of these victims and their families will know that the law must be enforced." For these reasons, he sentenced the defendant to 7½ years at hard labor on each count, to run concurrently.
*205 Thus, it is clear that the court considered but declined to suspend the sentence and place the defendant on probation, not because of any doubt as to his legal authority to do so, but for "practical reasons" which he did not relate.[2]
This court, of course, has constitutional authority to review excessiveness of sentences under Article I, Section 20, of the Louisiana Constitution of 1974 and may remand for resentencing where there has been inadequate compliance with La.C.Cr.P. Art. 894.1. State v. Sepulvado, 367 So.2d 762 (La.1979). However, there is little justification to remand for resentencing when the record plainly supports the sentence imposed. State v. Jones, 381 So.2d 416 (La. 1980).
In the present case the trial judge's reasons seem to fall short of the articulation of the considerations and factual basis for the sentence required by La.C.Cr.P. Art. 894.1. Nevertheless, we are convinced that under the circumstances of this case the trial judge did not abuse the wide discretion accorded him in sentencing. The maximum sentence which could have been imposed was 21 years (10½ years on each count to be served consecutively). One of the victims was harmed for life and the other was seriously wounded. A total of 7½ years of hard labor for these two unprovoked shootings is certainly reasonable and appropriate.
This assignment of error lacks merit.
For the reasons assigned, defendant's convictions and sentence are affirmed, but the case is remanded for further proceedings in accordance with the views expressed herein, reserving unto the trial court the authority to grant a new trial on the basis of his findings and also reserving the defendant's right to appeal from any adverse ruling by the trial court.
AFFIRMED CONDITIONALLY AND REMANDED.
MARCUS, J., dissents and assigns reasons.
MARCUS, Justice (concurring in part and dissenting in part).
While La.Code Crim.P. art. 718 provides that on motion of defendant the court shall order the district attorney to permit or authorize the defendant to inspect all documents which are favorable to defendant and which are material and relevant to the issue of guilt or punishment, art. 723 does not authorize discovery of statements made by witnesses or prospective witnesses, other than defendant, to the district attorney or to agents of the state. In Agurs, the Supreme Court stated that a Brady request must be specific and material to require the prosecutor either to furnish the information or submit the problem to the trial judge for an in camera examination. I do not consider that a general pretrial request for statements of witnesses for possible impeachment purposes at trial if their testimony is inconsistent with their prior statements is specific and material enough to require the prosecutor either to turn the statements over to defendant or to require the trial judge to conduct an in camera examination after the testimony of each witness at trial. As noted in Agurs, there is "no duty to provide defense counsel with unlimited discovery of everything known to the prosecutor." Accordingly, while I concur in the affirmance of defendant's convictions and sentences, I dissent from the remand.
NOTES
[*] Judges O. E. Price and Fred W. Jones, Jr. of the Court of Appeal, Second Circuit, and Judge G. William Swift, Jr. of the Court of Appeal, Third Circuit, participated in the decision as associate justices ad hoc, joined by Chief Justice John A. Dixon, Jr. and Associate Justices Walter F. Marcus, Jr., James L. Dennis and Jack C. Watson.
[1] Defense counsel had filed a general pretrial discovery motion for exculpatory information possessed by the state. The latter answered and stated that it had none, with the possible exception of a witness Metcalf who told officers that he saw someone near the scene being hit with a bat. Mr. Metcalf was later called to the stand and testified for the defense.
[2] La.C.Cr.P. Art. 895A(7) authorizes a condition for reasonable restitution on such a probated sentence.