430 So.2d 686 (1983)
STATE of Louisiana, State-Appellee,
v.
Johnny Ray TAYLOR, Defendant-Appellant.
No. 15228-KA, 15229-KA.
Court of Appeal of Louisiana, Second Circuit.
March 28, 1983.
Rehearing Denied May 5, 1983.
*688 Richard Goorley, Asst. Indigent Defender, Shreveport, for defendant-appellant.
Robert W. Gillespie, Asst. Dist. Atty., Shreveport, for state-appellee.
Before PRICE, SEXTON and NORRIS, JJ.
SEXTON, Judge.
Defendant, Johnny Ray Taylor, was charged by a bill of information with the May 1, 1981, armed robbery of Sheryl Fontana, a Shreveport Baskin-Robbins employee (hereinafter referred to as the "Baskin-Robbins event"). Defendant was also separately charged by a two count grand jury indictment with the May 6, 1981, armed robbery and aggravated rape of Mrs. Patricia Hink, an employee of the Liquor Shop (hereinafter referred to as the "Liquor Shop event"). On August 10, 1982, the jury unanimously found Taylor guilty of the May 1 armed robbery of Sheryl Fontana. In a separate trial concluded on August 25, 1982, the jury of twelve rendered a unanimous verdict finding Taylor guilty of the May 6 armed robbery of Mrs. Hink. The jury, by a 10 of 12 vote, also returned a responsive verdict of guilty of forcible rape. Both trials were presided over by the same judge and the defendant was sentenced by him on August 31, 1982. Defendant received sentences of 30 years at hard labor for the armed robbery of Ms. Fontana, 30 years at hard labor for the armed robbery of Mrs. Hink, and 40 years at hard labor for the forcible rape of Mrs. Hink. The sentencing judge decreed that the three sentences were to run consecutively.
Previously on May 8, 1981, the state caused to be filed a "Motion for Transfer of Custody" alleging that this defendant, age 16, had been arrested for the offenses of armed robbery and aggravated rape and transferred to the custody of juvenile officials. The state asserted that pursuant to LSA-R.S. 13:1570 A(5)[1] jurisdiction was *689 vested in the First Judicial District Court and requested the transfer of the defendant from the juvenile detention center to the Sheriff of Caddo Parish, Louisiana. This motion was granted by the district court.
The defendant now appeals from the convictions rendered in both trials, and his two appealsconsolidated for oral argument will be treated in this single opinion. We affirm defendant's convictions and sentences.

LIQUOR SHOP EVENT

FACTS
The rape and armed robbery of Mrs. Hink occurred on May 6, 1981, while she was working as a cashier at the Liquor Shop on Mansfield Road in Shreveport. Just before noon the victim was alone in the store with a person later described by her as a short teenage black male. While discussing his prospects for employment, the victim was faced with a gun in the hand of this individual and a demand for the store's money. The perpetrator jumped the counter and threatened to blow Mrs. Hink's head off if she did not do as instructed. She then placed an undisclosed amount of money in a plain paper sack. The robber was disgusted at the size of the take and demanded her personal funds. She was then led to the rear of the store with the gun at the back of her head where she gave the robber $15 of her own money. He then directed her to the front of the store and forced her to lock the door and display the "closed" sign. He then made her return to the back room with the gun still at her head. There, under the threat of having her "head blown off" and with the gun still at her head, she was forced to remove her pants and undergarments and submit to sexual intercourse.
Upon finishing, he wiped himself off with a cloth, threatened to kill the victim if she called the police, and left through the back door. However, Mr. Bennet Glover, a driver for the local Budweiser distributor, had arrived to make a delivery shortly before the defendant left the premises. Upon finding the door locked, he peered through the window. At that time he saw a young black male fumbling with his pants. Mr. Glover, with the assistance of another unidentified person in the area, attempted to find this individual, but he escaped.
Minos Kennedy, who worked at the nearby Wonder Bread Thrift Shop, testified that a light complected black male carrying a brown paper sack entered his store around 12:00 or 12:30. He stated the individual was nervous, sweaty and his pants were half unzipped. This individual requested that someone in the store call a cab. Addie Genter, who also works there, corroborated Mr. Kennedy's testimony and stated that she called a cab for the young man as requested.
Melvin Clinton, a cab driver, testified that he arrived at the Wonder Bread Thrift Shop around noon on the day in question. He stated that he drove a young black male, who flagged him down, from the store's front door to the F & M Courts which is located one block from the defendant's residence.
Mr. Clinton was unable to identify the defendant from a photographic lineup the following day and was not asked at the trial if he could identify the defendant. However, the victim, Minos Kennedy and Addie Genter all identified the defendant from a photographic lineup the following day. Mr. Kennedy, though stating that the defendant resembled the individual he saw in his store, was not able to make a positive identification in court. The victim positively identified the defendant at the trial as the *690 perpetrator and Mr. Glover positively identified the defendant at the trial as being the individual he saw inside the store.
Fingerprints were sought but no usable prints were located. The standard rape examination was performed and revealed no useful information other than the live seminal fluid which was found in the victim's vagina, on the cloth at the rape scene, and on the victim's panties. A valid search of the defendant's home subsequent to arrest revealed no cash, no items of clothing described as being worn by the perpetrator, and no weapon.
The defendant originally made four assignments of error but did not brief number one and it is therefore deemed abandoned. State v. Domingue, 298 So.2d 723 (La.1974). The assignments asserted before us complain (1) that a photographic lineup was improperly admitted, (2) that the evidence was insufficient for conviction, and (3) that the sentence imposed was excessive.
We will now deal with the assignments with respect to the photographic lineup and insufficient evidence. We will subsequently deal with the question of excessive sentence in conjunction with the sentence received for the Baskin-Robbins event in No. 15,228-KA.

ASSIGNMENT OF ERROR NO. 2PHOTOGRAPHIC LINEUP
By virtue of assignment of error number two the defendant complains of the introduction of the defendant's photograph in conjunction with the photographic lineup. This evidence was introduced at the conclusion of the victim's testimony during which the victim testified that she had, subsequent to the event, picked the defendant from the photographic lineup offered. The defense objection was based on State v. Prieur, 277 So.2d 126 (La.1973), contending that this photograph was a mug-shot, and thus constituted an improper reference to prior criminal conduct not admissible in this cause.
The photographic lineup in question, State Exhibit # 11, is a series of six color photographs consisting of frontal and side views of young black males. Each individual is dressed in civilian clothes and the Shreveport Police Department identification markers are concealed. There is nothing to identify the photographs as "mugshots." This exhibit is a well balanced and fairly presented photographic lineup, containing pictures of individuals appearing to be of about the same age with similar facial and hair characteristics, and similar complexions.
The fact that these witnesses were able, very shortly after the event, to pick this defendant from such a lineup and identify him positively as the perpetrator is highly probative and relevant, and clearly outweighs any possible prejudicial effect. State v. Williams, 402 So.2d 678 (La.1981); State v. Jones, 381 So.2d 416 (La.1980). This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 3SUFFICIENCY OF EVIDENCE
By this assignment the defendant contends that under the standard pronounced in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), there is insufficient evidence for a rational trier of fact to have found the defendant guilty beyond a reasonable doubt.
In making such an evaluation Jackson v. Virginia calls upon us to consider the evidence in the light most favorable to the prosecution. The elements of the offenses were clearly established by the prosecution. There was ample direct evidence of the defendant's identification together with other circumstantial evidence connecting him with the offense, as we outlined in the statement of facts. This assignment of error lacks merit.

BASKIN-ROBBINS EVENT

FACTS
Just after 11:00 a.m. on May 1, 1981, shortly after Ms. Fontana had opened the Baskin-Robbins store on the Greenwood Road where she worked, a young black male entered the premises. Ms. Fontana recognized him because he had submitted a job application several months before. She *691 testified the young man "hung around" for 15-20 minutes asking about his application and chances for employment. Ms. Fontana eventually asked the individual to leave. He then yelled, "hey, hey" and when she turned around he was holding a pistol "in her face." At his insistance she placed all the bills from the cash register (about $150) in a Baskin-Robbins sack. The robber then asked if there was a freezer in the place. Upon being told that there was, he ordered Ms. Fontana to the back. When they got there, the robber asked if the freezer locked. When Ms. Fontana said that it did he instructed her to enter it. This is a large walk-in freezer in which the temperature is maintained at 20° below zero. However, unknown to the robber, the freezer could be opened from the inside, and after a period described as "two to five minutes" Ms. Fontana opened the door and peered outside. She observed the robber walking outside next to the building. He saw her and shook his finger at her. She did not see the gun at that point.
The police attempted to find usable fingerprints but were unable to do so. The day following the event Ms. Fontana picked the defendant out of a photographic lineup containing a total of six individuals. She also positively identified the defendant at the trial.
The defense contended that the defendant was at home on the day in question babysitting with his small niece and brother, and a neighbor's 14 year old son, Edward Trotter. Edward testified that he was with the defendant from 8:00 or 9:00 a.m. until noon when his parents returned. The neighbors, Cindy Trotter and Henry Martin, testified that they left around 8:00 or 9:00 a.m. to purchase an El Camino pickup, returning about noon. They testified that the defendant was home when they left and when they returned.
The defense presented six assignments of error all of which have been argued to us. We will proceed to discuss all assignments at this point except assignment number five concerning excessive sentence, which will be discussed concurrently with the issue of excessive sentence in the companion appeal No. 15,229-KAthe Liquor Shop event.

ASSIGNMENT OF ERROR NO. 1VOIR DIRE RESTRICTIONS
By this assignment the defendant contends that his right to a "full voir dire examination" of prospective jurors guaranteed by Art. 1, § 17 of the Louisiana Constitution of 1974 was abridged. During the questioning of the juror Mr. McMasters, the defense inquired if the prospective juror had any problems with the justice system. The trial judge interjected to enlarge the question so as to inquire whether the juror had any problems with the justice system that would "influence his decision in the case." The juror replied that he had some difficulty with the insanity defense. There then ensued a three-way colloquy between the court, the prospective juror and defense counsel with respect to the fact that insanity was not involved in this matter. It was pointed out that the juror's qualms obviously involved the federal law which was different from that of Louisiana. The defense attorney indicated that his purpose was to determine whether or not the juror, even, if he had a preconception, could put aside his own feelings and apply the law as instructed by the judge.
The inquiry was irrelevant to the qualifications of this juror. Even if the juror had indicated that he could not adhere to an insanity instruction by the court, it would have been of no moment since insanity was not at issue. The trial court's explanation was appropriate and the restriction was within the judge's discretion as granted by LSA-C.Cr.P. Art. 786. Furthermore, there was no contemporaneous objection by defense counsel as required by LSA-C.Cr.P. Art. 841 which states, "An irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence." This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 2LIMITATION OF CLOSING ARGUMENT
In this assignment the defense asserts that the trial court improperly restricted his closing argument. This situation *692 occurred while the defense counsel was discussing the identification of the defendant by the victim. He began to refer to the apparent misidentification and conviction of three defendants in other jurisdictions for offenses allegedly perpetrated by them and recently confessed to by an individual arrested in Louisiana. This occurrence received considerable publicity in this state. The court instructed the defense counsel to restrict his argument to "the evidence in this case." The defense counsel then began to rhetorically inquire of the jury whether they had ever heard of a case in which a person was unjustly imprisoned because of mistaken identity. Counsel then stated, "I've heard of thousands and the history of law is filled with thousands." He went on to contend that eyewitness identification was well known to be untrustworthy. At this point the court interrupted and ordered defense counsel to "restrict your arguments to the evidence of the case and the law of this state."
With respect to closing argument, LSA-C.Cr.P. Art. 774 states:
"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case."
The trial judge has considerable discretion in confining the argument to the scope of the evidence and to fair and reasonable conclusions therefrom. State v. Toomer, 395 So.2d 1320 (La.1981). Wide latitude is to be generally allowed counsel in closing remarks, but only if there is undue restriction resulting in substantial prejudice is reversal required. State v. Joseph, 341 So.2d 861 (La.1977). In this cause defense counsel initially was clearly arguing outside the record in making reference to alleged circumstances of misidentification in other jurisdictions. Some small portion of his argument may well have been related to "common knowledge" such that it was permissible. However the argument was mainly references to matters outside the record, or to personal experience.
The better course when there is any doubt is to permit the widest possible latitude in closing argument. However, even though the eyewitness identification here was crucial to the state's case, considering the nature of the argument we are unable to say that the trial court abused its discretion in limiting that argument. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3JUROR-WITNESS CONTACT
This assignment is the most troubling of those asserted by the defense in these cases. During a noon recess of the trial the victim, Ms. Fontana, approached the juror, Janet Elkins, thinking that she recognized her from a previous brief contact at a nightclub. Ms. Fontana did not know that Mrs. Elkins was a juror. The two gravitated to lunch together at a restaurant near the Caddo Parish Courthouse and were joined by the owner of the establishment, once there. The conversation was casual and there was no reference to the case. At some point, apparently on the return to the courthouse, the juror Mrs. Elkins made it known that she was a juror and asked Ms. Fontana if it was proper for the two to be conversing. Ms. Fontana replied that she had been told that she could have contact with other persons but could not discuss the case.
In written reasons signed subsequent to the defense motion for a new trial on this issue, the trial judge found the above noted facts and also found that even at the time of Mrs. Elkins' inquiry about discussing the case, Ms. Fontana was still not aware that Mrs. Elkins was a juror. The trial court went on to find that Mrs. Elkins testified truthfully when she stated that the association with Ms. Fontana did not influence her, was not considered in her deliberation, and also that she did not relate her conversation with Ms. Fontana to any of the other jurors. In this regard we note that the jury was out exactly 45 minutes and returned with an unanimous verdict.
It should also be emphasized that defense counsel was aware of this contact prior to the conclusion of this particular lunch recess, *693 apparently being so informed by the assistant district attorney trying the case. We have searched the record thoroughly and have been unable to find any mention, objection, or motion by this seasoned defense counsel with respect to the contact.
Contact between a juror and the state's witness is a matter of serious concern, Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), particularly where as here, the in court identification of the defendant by the witness in question, as well as her identification of the defendant from the photographic lineup are the heart of the state's case. A circumstance akin to State v. Dotson, 260 La. 471, 256 So.2d 594 (La.1971), is thus presented. There the defense was a "frame up" by the state's narcotics officer who ate lunch with a jury member and two other persons during the trial. Distinguishing Turner, due to the continuance of the prolonged contact in Turner, the Dotson majority established the following rule in upholding the conviction:
"In State v. Johnson, supra, [149 La. 922, 90 So. 257] this Court aligned itself with the majority rule and upheld the conviction after a juror had eaten lunch with a State witness.
....
The ruling of the trial judge as to the misconduct of a juror is entitled to great weight. See State v. Fike, 129 La. 663, 56 So. 630; Marr's Criminal Jurisprudence of Louisiana, § 467 p. 714 (1923).
Under the circumstances, this Court cannot presume prejudice. See LSA-C. Cr.P. Art. 921; State v. Nails, supra, [255 La. 1070, 234 So.2d 184]. While innocent contact of a juror with a witness is to be avoided, when such conduct does occur it does not always vitiate the conviction." Dotson, supra, at p. 613.
As the trial judge found, there appears to be no prejudice in this cause. However, we would be remiss if we did not state that we would view the situation quite seriously if there had been a contemporaneous objection and a request to cure which had been overruled. As we previously noted, defense counsel was well aware of this circumstance and apparently informally discussed it with the trial judge prior to the reconvening of court. Defense counsel obviously decided to proceed, and to assert this issue subsequently, if necessary, in order to obtain "two bites at the apple."
This situation is very similar to State v. Brown, 321 So.2d 516 (La.1975). In Brown two deputy sheriffs who were both witnesses for the state ate at a table with two jurors serving in the case both before and after they were selected. The deputies were assigned to jury escort service at the time. There was no evidence that there was any discussion of the case. Defense counsel informally objected to the practice and the court immediately ordered the assignment of other deputies to jury escort service who had nothing to do with the evidence in the case.
The Brown court did not reach the substantive merits of the defendant's complaint because:
"The evidence shows the defendant's counsel was fully aware of the circumstances and in fact informally complained of it to the judge at the time and obtained corrective action. Counsel was apparently satisfied at the time, which was before the selection of the jury was completed. Counsel did not make any formal objection at the time nor at any time during the trial. The defendant's first formal contention of error was made after the verdict, in his motion for a new trial.

The belated complaint of error cannot on appeal be the basis by itself for reversal, for an alleged error to which no formal objection is made at the time is deemed waived. La.C.Cr.P. Art. 841." Brown, supra, at p. 518. [Emphasis added].
We likewise fail to reach the substantive complaint here because of the lack of formal objection. This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4SUFFICIENCY OF EVIDENCE
In this assignment the defendant makes the argument under Jackson v. Virginia, *694 supra, made in the Liquor Shop appeal that the evidence when viewed in the light most favorable to the prosecution is insufficient to sustain a conviction.
This assignment lacks merit. Although the testimony was in conflict, the jury obviously chose to believe the victim's very positive in court identification of the defendant, based on her previously having received an employment application from him, and having selected him from a photographic lineup shortly after the event; rather than the circumstantial alibi evidence of the two neighbors and the direct alibi evidence of the neighbor's 14 year old son.
The evidence of the prosecution, if accepted, is sufficient to sustain the state's burden of proof.

SUPPLEMENTAL ASSIGNMENT OF ERRORMISTRIAL MOTION
By assignment labeled "Supplemental Assignment of Error" the defendant complains that the trial court erred in failing to sustain a motion for mistrial made during the testimony of Officer Smith. The testimony complained of was Officer Smith's response when asked if he knew where the defendant lived. The officer responded, "The last address I workedhad any dealings with him on was 4300 F & M Court." The defense asserts that this testimony is an improper inference that the defendant had a criminal record.
LSA-C.Cr.P. Art. 770 requires a mistrial when a judge, district attorney or court official refers directly or indirectly, before the jury, to another crime alleged to have been committed by the defendant, the evidence of which is inadmissible in the case before the court. However, LSA-C.Cr.P. Art. 771 states that if an inadmissible prejudicial remark is made before the jury by a judge, district attorney or court official and the remark is not within the scope of Article 770; or if the remark is made by a person other than the judge, district attorney or court official, even if the remark is within the scope of Article 770 the court, upon request, may simply admonish the jury to disregard the remark or comment. The article continues:
"In such cases on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial." [Emphasis added].
Thus, according to Articles 770 and 771 a mistrial is only warranted if the remark as to other criminal conduct is made by a judge, district attorney or court official, or if the remark is by someone else and it is of very serious magnitude.
Out of the presence of the jury, subsequent to defense counsel's motion for mistrial, the trial judge noted his own impression that the response of the witness had reference to contact concerning this case, and went on to state, "it doesn't connect this defendant with anything at all." He then noted that the response of the witness could have reference to many things and no specific reference to criminal conduct was mentioned. We note that the defense did not move for an admonition, apparently not wishing to further emphasize the remark indicating to us that the defense thought that the remark, if "left alone," was not likely to prejudice the jury.
The defense cites State v. Foss, 310 So.2d 573 (La.1975) in support of the argument for reversal under this assignment. The situation in Foss was considerably more aggravated than that presented here. Furthermore, that portion of the Foss opinion relied on by the defense is not authoritative on the issue as only two justices subscribed to that part of the opinion. Furthermore, we view this situation as less serious than that presented by State v. Overton, 337 So.2d 1058 (La.1976), where the court held that a mistrial was not warranted even though there, as in our case, no admonition was given. The alleged offending response in Overton was, "we had had contact with the two subjects that were arrested on previous occasions." This assignment of error lacks merit.

SENTENCES
Finally, we consider the sentences imposed on this 16 year old defendant. We *695 thus proceed to a concurrent discussion of assignment number four with respect to the Liquor Shop event and assignment number five with respect to the Baskin-Robbins event, both of which complain that the sentences imposed on the defendant in each case, are excessive. He received a sentence of 30 years at hard labor for the armed robbery of Mrs. Hink in the Liquor Shop event and an additional 40 years at hard labor for the forcible rape of her, the sentences to run consecutively. He also received a consecutive sentence of 30 years at hard labor for the armed robbery of Ms. Fontana in the Baskin-Robbins event.
In imposing these sentences the trial court noted that the defendant, then 17, was 16 years of age at the time of the three offenses and that there were two separate and distinct circumstances involved. The court also noted that the evidence supported a conviction for aggravated rape. The court made the specific pronouncement that any lesser sentences would deprecate the seriousness of the offenses. Furthermore, the court noted that when the defendant placed Ms. Fontana in the freezer, he thought that she could not extricate herself, and that if she had not been able to do so she might well have died as a result. The court added that there were too many armed robberies in the community, particularly of lone convenience store attendants.
While sociological concerns may be a factor in passing sentence, the sentence must be particularized for the individual. State v. Ray, 423 So.2d 1116 (La.1982). The record should also indicate that the trial judge adequately considered mitigating circumstances in favor of the defendant in articulating the reasons for sentence. State v. Duncan, 420 So.2d 1105 (La.1982). In this case the trial judge's articulation of the reasons for sentence was inadequate under LSA-C.Cr.P. Art. 894.1.
However, there is an exception to these rules of articulation. The trial court's failure to sufficiently articulate reasons is not cause for remand for resentencing if the circumstances of the case support the sentence. Compliance with this article is not an end in itself and is designed as a guideline to channel the court in sentencing discretion and to provide a factual record for excessiveness review. If the record clearly supports an adequate factual basis for the sentence, remand is not required. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Boatright, 406 So.2d 163 (La.1981).
Given these guidelines, we are of the view that the record in this cause supports the sentences rendered, even absent a sufficient articulation. The sentences are not excessive because of the circumstances of the offenses themselves. In the Baskin-Robbins event, the defendant was armed with a pistol and was threatening to the victim. Furthermore, he placed the attendant in a very cold deep freezer with the idea that she would not be able to extricate herself. Had his intent achieved fruition it is indeed likely that his action could have resulted in serious injury or possible death to the attendant. Armed robbery is viewed as a very serious offense in Louisiana, as is indicated by the maximum sentence provided of 99 years at hard labor without benefit of parole, probation or suspension of sentence. The 30 years at hard labor imposed is well within the statutory maximum, and given the circumstances of the case we do not view it as excessive.
We likewise do not view the sentence of an additional 30 years at hard labor for the armed robbery of Mrs. Hink as excessive. This offense was committed within five days of the previous offense and the attendant was threatened with her life on at least five occasions. The manner of the offense was very menacing. The defendant maintained the gun at the head of the victim for most of the duration of the event. Again, the sentence is well within the statutory maximum for this very serious offense. Also, the fact that the armed robbery sentences are consecutive is not cause for concern. The legislature has indicated that, as a general rule, sentences for separate offenses are to be imposed consecutively. LSA-C.Cr.P. Art. 883.
The most serious concern with respect to these sentences is the defendant's vigorous *696 contention that the sentences imposed for the armed robbery and the forcible rape of Mrs. Hink should run concurrently because of LSA-C.Cr.P. Art. 883's general pronouncement that sentences based on the same act or transaction should be concurrently served unless the court indicates otherwise.[2] However, concurrent sentences arising out of a single course of conduct are not mandatory. All factors in the case are to be considered. State v. Molinario, 400 So.2d 596 (La.1981).
It is particularly pertinent that the two offenses committed in the Liquor Shop event are separate and distinct acts which we do not view as being part of a common scheme. This situation is far different from the simultaneous robbery of two persons found in a store. Two separate and distinct courses of conduct were required. First, the defendant intended to rob the premises. Subsequently, as a separate act, he raped the attendant. Each of these actions is a separate and very serious act. Most importantly, as the trial judge noted, the defendant's act in raping the victim actually constituted aggravated rape, rather than forcible rape. This factor is a legitimate point for consideration in imposing sentence. State v. Roussel, 424 So.2d 226 (La.1982). The penalty for aggravated rape is life imprisonment without benefit of parole, probation or suspension of sentence. Thus, under the circumstances the consecutive sentence of 40 years at hard labor given this defendant for the offense of forcible rape is not excessive. Considering the totality of the circumstances of both events, including their close proximity in time and the treatment of the victims in each, the aggregate sentences imposed on this 16 year old defendant of 100 years at hard labor are not excessive.

SUMMARY
Accordingly, the convictions and sentences of the defendant in both cases, No. 15,228-KA and No. 15,229-KA, are affirmed.
AFFIRMED.
NOTES
[1] LSA-R.S. 13:1570 A(5)

Except as otherwise provided herein, the court shall have exclusive original jurisdiction in proceedings:
A. Concerning any child whose domicile is within the parish or who is found within the parish:
* * * * * *
(5) Who violates any law or ordinance, except a child who, after having become fifteen years of age or older is charged with having committed first degree murder, second degree murder, manslaughter, aggravated rape, or a person who, after becoming sixteen years of age or older, is charged with having committed armed robbery, aggravated burglary, or aggravated kidnapping. Once such a child has been charged with having committed any offense listed in this Paragraph, the district court shall retain jurisdiction over his case, even though the child pleads guilty to, or is convicted of, a lesser included offense, and a plea to, or conviction of, a lesser included offense shall not revest the court exercising juvenile jurisdiction of such a child.
[2] LSA-C.Cr.P. Art. 883 Concurrent and consecutive sentences

If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.