731 So.2d 286 (1998)
STATE of Louisiana
v.
Reginald GREEN.
No. 98-K-0912.
Court of Appeal of Louisiana, Fourth Circuit.
September 9, 1998.
*287 Harry F. Connick, District Attorney, Susan Erlanger Talbot, Assistant District Attorney, New Orleans, Louisiana, for State of Louisiana/Relator.
Kevin V. Boshea, Regan & Boshea, P.L.C., New Orleans, Louisiana, for defendant/respondent.
SCHOTT, Chief Judge.
On the application of the State of Louisiana, we grant certiorari to review a judgment of the trial court granting defendant's application for post conviction relief based on a claim of ineffective assistance of counsel.
Defendant, Reginald Green, was charged and convicted of armed robbery. He was adjudicated a multiple offender and sentenced to serve sixty-six years and eight months at hard labor without the benefit of parole, but with credit for time served. Defendant's conviction and sentence were affirmed in State v. Green, 96-KA-1908, unpub., (La.App.4th Cir. 6/25/97), writ denied, 97-1981 (La.1/9/98), 705 So.2d 1098.
The facts surrounding the defendant's conviction for armed robbery, as reported in State v. Green, 96-KA-1908, unpub., (La.App. 4th Cir. 6/25/97), are as follows:
Bernadette Washington, cashier at the McKenzie's Bakery on Morrison Road, testified that on October 5, 1994, the defendant entered the store at 7:15 a.m., ordered some doughnuts, and asked for a quarter in exchange for five nickels. He bought cigarettes from the cigarette machine, then left in an old, small, "orangish", "reddish" car. Washington knew him as a frequent customer of the store. He returned at 8:15 and demanded money. He held a gun in a dirty towel. Washington began to give him the money in the register, but he said that she was moving too slowly. He came around the counter and took the money out of the register. Then he said that he knew where the rest of the money was kept and demanded that she open the safe. She did so because he continued to point the gun at her. In all, he took $235.00. She did not see *288 him leave in the car. Washington called the police.
The defendant continued to come to the store as if nothing had happened. Washington called the police each time, but the defendant was not arrested. Then on October 26, 1994, Officer Keith Sholes was on the premises when the defendant entered the store to buy cigarettes. Washington whispered that the defendant had robbed her, and Sholes placed him under arrest.
Officer Harry Stovall took the police report. He said that he originally wrote 8:15 a.m. as the time the crime was committed, but changed it to 9:15 a.m. He said he was not sure which time was correct.
Officer Daniel Wharton wrote the supplemental report and recorded the time of the crime as 9:15 a.m.
Reginald Dove testified for the defense that he had been friends with the defendant since childhood. On October 5, 1995, he was living in the adjacent apartment to the defendant. At 9:00 a.m., he went over to the defendant's apartment to get a cigarette. He stayed for twenty minutes.
Detective Herman Cade testified for the defense that he investigated several robberies of businesses in the area in which the crime was committed that occurred around the time this crime occurred. He said that he arrested a man, other than the defendant, who drove a reddish Honda.
Immediately before trial began, the State informed the court that it had just learned from the defense that Dove, the alibi witness, would testify. The defense responded that it had just learned of the existence of the witness. Defense counsel stated that Dove was the defendant's next door neighbor and that he had gone to the defendant's house at 9:00 a.m. on the morning the crime was committed. The court asked what time the robbery was committed, and defense counsel responded 9:15 a.m. The State objected to any alibi testimony. The defense argued that it told the State a few days before trial that it might present an alibi witness. Defense counsel stated that there was nothing he could have done to have learned of the identity of the witness earlier. The court then put Dove on the stand in open court, and he testified to the facts set out above. After the State crossed, the court noted that the arrest register stated the crime had occurred at 8:15 a.m. The Assistant District Attorney said that the crime had in fact been committed at 9:15, and that the arrest register contained a misprint. The court then ruled that Dove could testify because the State had failed to file a written request for alibi witnesses.
Trial began and Wharton testified that he wrote 9:15 a.m. in his supplemental police report. He explained that his partner, Officer St. Martin, began filling out that report, and that he incorrectly recorded the time at the top of the report as 8:15 a.m. Wharton said he thought St. Martin "transposed the numbers wrong." He said that he believed the robbery took place at 9:15 a.m. because "that's what the original police report said." On re-direct, the State produced the initial report, and Wharton said it appeared to him that report originally recorded the time of the crime as 8:15 a.m., but that 9:15 a.m. had been written over it.
Washington said she was sure that the crime occurred at 8:15 a.m., that she had been in the court room earlier in the morning when she heard 9:15 a.m., and that she told the Assistant District Attorney that the correct time was 8:15 a.m.
Stovall said that he wrote the original report and that he "originally wrote 8:15. That conflicted with the time. Time confusion, really. And I put 9:15" He said that without looking at the report, he was not sure what time the crime occurred. Later he said, "I can't recollect what time the robbery took *289 place. It could have been a typographical error on my behalf."
State v. Green, 96-KA-1908, unpub., p. 1-2 (La.App. 4th Cir. 6/25/97).
In his application for post conviction relief, the defendant alleged that because his counsel prepared an alibi defense for the wrong time, he was deprived of a fair trial. More specifically, the defendant enumerated the following five errors allegedly made by his trial counsel:
1) Failure to move for the sequestration of witnesses at the pre-trial Reginald Dove hearing;
2) Failure to file a new written Bill of Particulars, Motion for Discovery, and requiring written answers from the prosecution;
3) Upon discovery of the new time, counsel failed to move for a mistrial;
4) Upon discovery of the new time, counsel failed to move for a recess of the trial in order to prepare a proper defense;
5) Upon discovery of the new time, counsel failed to make an objection to the introduction of the new previously undisclosed time of offense.
At the hearing on the application for post conviction relief, the defendant presented the testimony of Robert Jenkins, the defendant's trial attorney and the testimony of Maurice Landrieu, the assistant district attorney who prosecuted the case. Jenkins testified that the defendant's case was initially in Section G and that Jack Dolan was initially the defendant's attorney. Family members contacted Jenkins and Keith Hurst and retained them to represent the defendant. Since Hurst had clerked for Judge Shea, Judge Shea recused himself and the case was sent to Section C.
According to Jenkins, he filed no written discovery motions because, having reviewed the docket master, he believed motions had already been filed and the case was set for trial. Jenkins testified that he was not in possession of any written documentation provided by the State telling him when the crime took place. He also testified that he did not get the incident report from the State; everything he had came from Dolan's file.
Although Jenkins' trial strategy was to establish an alibi, he did not know the correct time of the offense and did not prepare an alibi for the correct time. While the alibi witness was testifying at the pre-trial hearing, the victim entered the room. Twice, the defendant told Jenkins the victim was in the courtroom. Yet, he did not ask for sequestration of witnesses. He was under the impression that everyone was going to take care of their own witnesses and things were moving quickly. He was talking to the Judge and D.A. and arguing about being given one time in terms of the police report and being informed just before the trial started that this was the wrong time.
Jenkins was aware from seeing the trial record that after having heard the alibi witness, the victim walked up to Landrieu and told him that 9:15 was not the correct time; the correct time was 8:15. Landrieu never informed him that he had the wrong time or that he (Mr. Jenkins) had prepared a defense for the wrong time. The record is unclear as to when Jenkins realized he had the wrong time. At one point Jenkins stated that he realized his entire defense was prepared for the wrong time about forty-seven seconds before the jury entered the courtroom. After they walked up to the podium for jury selection, they were told that 9:15 was the wrong time. At another point when asked when he found out he had prepared the wrong time for an alibi, he answered, "The moment the Courtthe time the trial was supposed to start." Still later, he indicated that he learned he had prepared an alibi for the wrong time when the victim testified.
Jenkins testified that when the victim testified that the crime occurred at 8:15, he told the Judge (at the bench) that his whole defense was shot, but he failed to *290 move for a recess, mistrial, or even object for the record because at that time he was upset about what was going on. His decision to choose an alibi defense was based on the police report and his investigations as to where the defendant may have been at the time the crime took place.
Jenkins testified that although his primary defense was to establish an alibi, the events that transpired the morning of trial left him with no choice but to improvise. One defense offered during trial was that Shaun Medias, a person who had been convicted of robbing Time Savers, Mackenzie's, and other places, was also the perpetrator of this crime.
Additionally, in cross examining the victim, Jenkins attempted to create an inference that the victim was the thief and was covering for her own act. He also admitted questioning the officers about the 8:15-9:15 discrepancy. He admitted there was an inference that the time discrepancy could be used as an impeachment device for the police officer and victim; however, he believed the jury rejected it because he did a poor job impeaching the witnesses due to lack of preparation. Although Jenkins felt he did all he could with the two other defenses, he stated, "you can't prepare a defense while you're in trial. The alibi defense was prepared prior to trial." He had no chance to investigate the other two defenses.
When asked whether the defendant told him he had a witness for 8:15, Jenkins stated that Landrieu had asked that same question the previous week. It caused him to go back and review his notes. He believed the defendant said he had some people who could show where he was prior to 9:15, but he could not remember who the people were. He emphasized that, at that point in time, he had no opportunity to go investigate. He did however recall the defendant saying he had a witness or two who could show he was somewhere else. One potential witness was defendant's girlfriend.
Jenkins admitted that his motion for new trial said nothing about the possible investigation of new witnesses that had heretofore been undiscoverable as a result of the time discrepancy. He admitted that at some point during the previous week he told Kevin Boshea (current counsel for defendant) and the State that he thought he was ineffective in representing the defendant on that particular day.
Landrieu testified that he was familiar with the prosecution of the defendant and had reviewed part of the DA's file in connection with the case.
He stated that he was not the initial trial attorney on the case. Landrieu discovered the defense was calling an alibi witness right before trial and objected because he had not been given ten (10) days notice. According to him, he was never served with any Bill of Particulars or motions by Jenkins or any other defense attorney. He recalled speaking to the victim, Ms. Washington, who was present in the courtroom when Dove, the alibi witness, testified. She told him 9:15 was not the correct time as far as the armed robbery was concerned. Landrieu testified that he knew Jenkins had prepared an alibi for 9:15, and, prior to picking the first juror, he knew that the victim was going to say the robbery occurred at 8:15.
Landrieu admitted that he allowed Jenkins to believe that the alibi for the crime and the appropriate time was 9:15. Landrieu knew that, according to the victim, 9:15 was not the correct time, but according to the police officers, it was the correct time. The reason he did not tell Jenkins that he had the wrong time was because he (Landrieu) was not sure of the time it actually took place. The police officer said 9:15 and the body of the incident report said 9:15. Additionally, Landrieu was never served with a bill of particulars. He admitted that, as of the time of the hearing on the application for post conviction relief, he had not discovered that somebody filed a bill of particulars in the case. Landrieu testified that he prepared for a trial for *291 9:15. If he had answered a bill of particulars he would have said the crime occurred at 9:15. If Jenkins had requested the time of the robbery in writing, he would have told him 9:15, and once he found it was the wrong time he would have told him but Jenkins did not ask. Landrieu believed the 8:15-9:15 discrepancy was well presented to the jury, as he initially raised the time problem on direct examination.
According to Landrieu, he had a conversation with Jenkins the week before the hearing on the application for post conviction relief. At that time, Jenkins stated that he believed he had been effective. Jenkins also told him that he had another witness in court or available to testify, but he did not want to call her for other reasons. That witness was the defendant's girlfriend. Landrieu emphasized that the defendant advanced other defenses at trial, i.e. the possibility the victim took the money and made the story up about an armed robbery. He testified that Jenkins also raised the issue of the State's failure to introduce a tape from a surveillance camera. However, according to Landrieu, the prosecution had no surveillance tape. Jenkins also presented evidence to the jury that Shaun Medias, who had been arrested around the same time, also used a reddishorange colored car in connection with the armed robberies. He argued that Medias could have been the robber. Landrieu testified that he was not aware of any information which affirmatively exonerated Reginald Green from committing this armed robbery at 8:15.
Following the hearing, the trial judge granted the application for post conviction relief, stating:
The Court, having reviewed the Memos (sic) submitted, the Court, having heard the testimony elicited at the hearing, and the Court, likewise, having heard argument of counsel, finds that this case was (sic) comedy of error, a true comedy of error and a tragedy of justice. Argument of counsel does not substitute for preparation of a defense and going forward with a defense. While argument may have been made, it is no substitute for thorough and effective preparation of a defense to ensure their due process right and a proper defense is afforded to the defendant. To allow this conviction to stand as presented at the time would just be fundamentally unfair. The Court grants the Motion of Post-Conviction Relief application based upon ineffective assistance of counsel as evident by a told (sic) unprepared defense that was argue (sic)and advance (sic) on the day of trial.
In its writ application, the State argues the trial court erred in finding the defendant received ineffective assistance of counsel at trial because the defendant suffered absolutely no prejudice as a result of his counsel's alleged errors. More specifically, the State argues that the defendant failed to show that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different.
The defendant's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced the defendant. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. There exists a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. 668, 104 S.Ct. at 2065. "[It] is not enough for the defendant to show that the errors had some conceivable effect on the *292 outcome of the proceedings." Id., 466 U.S. 668, 104 S.Ct. at 2067. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693, 104 S.Ct. at 2068; State v. Bouie, 598 So.2d 610, 613-614 (La.App. 4th Cir.1992). The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4th Cir.1992).
In the original appeal, the defendant argued that he was deprived of a fair trial because he was misled as to the time the State alleged the crime occurred. In rejecting defendant's claim, we noted the discrepancies in the testimony concerning the time the crime occurred, and further noted that, after the State rested, the defendant called Dove, the alibi witness, who gave testimony providing an alibi for 9:15, but not 8:15. In affirming the defendant's conviction we stated:
Defense counsel made no objection or motion for mistrial on the record. Perhaps defense counsel thought there was enough confusion about the time that the jury might not convict defendant. Furthermore, when it first became clear to all during the testimony of Mrs. Washington that the crime occurred at 8:15, defense counsel picked up on the discrepancy in his cross examination of her in an attempt to discredit her testimony as well as that of the police. Yet he proceeded to put Dove on the stand without even asking for a continuance much less moving for a mistrial.
Finally, in his arguments at the hearing on the motion for a new trial counsel argued prejudice but he failed to explain why he made no objection, motion for mistrial or motion for continuance or why he proceeded in the way he did. At that hearing he did not suggest that he could produce an alibi witness for 8:15. He simply argued that he was generally prejudiced in his defense.
In this court defense counsel argues for a reversal of the conviction even though no motion for a mistrial or other objection was made by trial counsel. An error is not preserved for review on appeal in the absence of a timely objection. La.C.Cr.P. art. 841. This rule is designed to prevent a defendant from taking his chances at the trial without objecting and then, in the event of an unsuccessful outcome, trying to use the objectionable material for the first time on a motion for new trial or appeal. It is arguable that trial counsel's conduct was an intentional part of his trial strategy. While it is also arguable that his conduct resulted in defendant being deprived of a fair trial, that question cannot be resolved on appeal.

Accordingly, the judgment appealed from is affirmed. (emphasis added)
State v. Green, unpub., 96-1908, pp. 5-6 (La.App. 4th Cir. 6/25/97).
While the issue of whether the defendant was deprived of a fair trial could not be addressed in the appeal, the resolution of that issue must be addressed in deciding whether the trial court erred when she granted the defendant's application for post conviction relief.
We have recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Bienemy, 483 So.2d 1105 (La.App. 4th Cir.1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
*293 In our previous opinion, we suggested that trial counsel's conduct may have been an intentional part of his trial strategy. However, the testimony at the post conviction relief hearing clearly demonstrates that proceeding with an alibi witness for the wrong time was definitely not a part of counsel's trial strategy. Rather, Jenkins testified that he was so upset about how the trial was going he failed to move for a recess or mistrial. Instead, at a bench conference he told the judge his whole defense was shot.
Nonetheless, the State contends that the failure to ask for sequestration of witnesses did not prejudice the defendant because it was irrelevant to the outcome. According to the State, the victim had maintained all along that the time of the robbery was 8:15, and there was a scratch out over the report that appeared to give the time of the robbery as 9:15.
The inference from the defendant is that the victim was lying to possibly cover up her own wrongful acts. However, this does not explain why the initial report appeared to have 9:15 superimposed over 8:15. The fact that one of the officers initially placed 8:15 on the report tends to validate the victim's testimony that the robbery actually occurred at 8:15. Because the victim had always maintained the robbery occurred at 8:15, we cannot say the defendant has shown prejudice by his counsel's failure to sequester the witnesses at the pre-trial hearing.
The State next argues that the decision of defense counsel not to file discovery did not prejudice the defendant because the time discrepancy was discovered at a time when the defendant could still make use of it.
Counsel is not required to assert a pretrial motion, and a defendant must show specific prejudice to claim that the failure to make such a motion resulted in ineffective assistance. State v. Valentine, 95-0970 (La.App. 4 Cir.1/19/96), 668 So.2d 383, 386, writ denied, 97-2011 (La.2/13/98), 706 So.2d 988.
The record clearly indicates that prior to trial both the prosecutor and the defense believed the time of the offense was 9:15 a.m. The first notice that perhaps this was not the correct time came at the hearing on whether the defense would be allowed to call Dove to testify. Following the testimony given by this witness, the defense and prosecutor acknowledged the relevant time of the offense was 9:15 as evidenced by the following exchange:
BY THE COURT:
According to the arrest register I'm looking at, the incident happened at approximately 8:15 in the morning; is that correct?
BY MR. JENKINS:
Nine fifteen.
BY THE COURT:
I'm looking at something that says 8:15 on the arrest register.
BY MR. LANDRIEU:
Nine fifteen, Your Honor. I think that might be a misprint. The police reports have 9:15.
BY MR. JENKINS:
Right, that's what we have, Judge.
BY THE COURT:
I'm just looking at the arrest register.
However, sometime after this exchange occurred and prior to her testimony, the victim advised the prosecutor that the correct time for the robbery was 8:15, not 9:15. When called to testify, the victim testified that she had been sitting in the courtroom when she heard someone say the time of the robbery was 9:15, and at that time she told the prosecutor that was not true, that the offense took place at 8:15.
The time of the robbery was pivotal in the instant case. The defense believed it had an alibi witness to testify that the defendant was seen at a different location at the time the robbery allegedly took place. The fact that the State was operating *294 under the same erroneous assumption that the time of the crime was 9:15 was neither prejudicial nor advantageous to the State. Time of the offense was totally unimportant to the State's case. The only thing the State had to prove was that the defendant committed the crime. However, the defendant had to show that at the time the victim claimed he was robbing the McKenzie's, he was not in the vicinity. Knowledge of the exact time of the crime was essential to the defense's case. Nonetheless, the prosecutor testified that even if he had known about written discovery motions requesting the time of the crime, he would have given 9:15 as the time of the crime since this was the time on the police reports. Since the defense discovered the error in time almost immediately after the prosecutor, it cannot be said defendant was prejudiced by the failure to file a written discovery request in this case, as opposed to relying on informal discovery.
In his application for post conviction relief defendant also argued that counsel's failure to request a mistrial or a recess after learning of the new time demonstrated that he did not receive effective assistance of counsel.
The first step of the inquiry to determine whether counsel was ineffective for failing to move for a mistrial is to determine whether the defendant was in fact entitled to a mistrial. If he was, then the "ineffective assistance" analysis should continue. If he was not, then his claim fails ab initio. State v. Busby, 94-1354, p. 7 (La.3rd Cir. 4/5/95), 653 So.2d 140, 145, writ denied, 95-1157 (La.9/29/95), 660 So.2d 854.
The grounds for ordering a mistrial are enumerated in La.C.Cr.P. art. 775 which provides:
Art. 775. Mistrial; grounds for
A mistrial may be ordered, and in a jury case the jury dismissed, when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial.
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial shall be ordered, and in a jury case the jury dismissed, when the state and the defendant jointly move for a mistrial.
The only aforementioned provision which could conceivably apply in this case is the provision for ordering a mistrial "when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial." We cannot say that defense counsel's failure to investigate and present witnesses to establish an alibi for 8:15 was prejudicial.
In the instant case, both the defendant's attorney and the prosecution admittedly believed the crime occurred at 9:15 instead of 8:15. Upon finding that evidence would be introduced to show the crime occurred at 8:15, defense counsel still proceeded to trial. He presented an alibi witness for 9:15. He also presented an alibi witness for 11:00 that day. Additionally, Jenkins thoroughly cross examined all witnesses presented by the State and made attempts to urge other defenses. Absent a showing that a witness was available to testify to the defendant's whereabouts at 8:15, we do not find defense counsel's proceeding to the trial knowing that the time had changed was prejudicial. Grounds for a *295 mistrial did not exist. In view of this, we cannot say defendant's counsel was ineffective for failing to move for a mistrial.
Similarly, defendant's complaint that his counsel should have requested a recess after discovering the new time has no merit. Counsel testified that what he believed he needed was time to prepare a defense. A recess would have been useless unless the defendant could have produced a witness to testify as to his whereabouts at 8:15. Further, if the defendant had no such witness at that time, he would have needed a continuance to investigate and try to find an alibi witness. In order to obtain a continuance based on not having an essential alibi witness, the defendant would have had to proffer the expected testimony of the witness and make a showing the witness could be located and made available at a future date. La. C.Cr.P. art.. 709, 710. State v. Cockerham 95-0172 (La 4th Cir. 3/14/96), 671 So.2d 967, writ denied, 96-1257 (La.10/25/96), 681 So.2d 363. No evidence was presented at the hearing on the application for post conviction relief to show the defendant would have been able to do this.
We find that none of the alleged errors made by trial counsel are sufficient to establish prejudice. Counsel presented an alibi witness for a time no longer at issue. He then attempted to solicit information to plant an inference in the jury's mind that the victim may have taken the money, yet he presented no evidence to support such a defense. Finally, his attempt to show Shaun Medias may have committed the robbery was ineffectual. Counsel testified that he believed he was ineffective. However, if defense counsel presented all defenses available to him, it cannot be said he was ineffective for failing to produce a not guilty verdict for this third felony offender.
The strongest factor negating a finding of prejudice is the defendant's failure to allege or present any evidence whatsoever at the hearing on the motion for new trial to demonstrate that a witness exists who could supply an alibi for his whereabouts at 8:15. The fact that the defendant still had not produced an alibi witness as of the April 1998 post conviction relief hearing raises serious questions as to whether such a witness exists. Because defendant has failed to produce such a witness, he has not demonstrated prejudice.
The petitioner in an application for post conviction relief has the burden of proving that relief should be granted. La.C.Cr.P. art. 930.2. Absent some tangible evidence of new witnesses, i.e. affidavits or at least names, addresses, and substance of expected testimony, we do not find that the defendant met his burden of proving counsel's conduct undermined the outcome of this particular case.
In both his application for post conviction relief and response to the State's writ application, defendant argued that he was denied due process by the State's failure to disclose Brady material. Although the trial court did not address this claim in granting defendant's application for post conviction relief, we will do so.
The gist of the defendant's Brady claim is that the actual time the robbery was committed was "absolutely material" to the issue of guilt under Brady. Because the State failed to inform the defense counsel of the actual time of the offense promptly, the defense argues a Brady violation occurred.
When the defense requests evidence that is favorable to the defendant and is material to guilt or innocence, the state must produce it. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The Brady rule applies to evidence tending to impeach the testimony of a witness whose credibility or reliability may be determinate of guilt or innocence. State v. Davenport, 399 So.2d 201 (La. 1981)
In the instant case, the record does not establish that a Brady violation occurred. First, it is not clear that the defense proceeded *296 with the 9:15 time period because of information received from the State. Additionally, it is not clear the 9:15 time period was the incorrect time for the crime. Moreover, assuming that the time of the offense was material to guilt or innocence, the evidence supports a finding the State disclosed the discrepancy promptly.
Defendant's alleged Brady claim is premised upon the proposition that the eyewitness told the State the robbery occurred at 8:15 immediately after hearing the discrepancy in time at the pretrial hearing. Because the State knew the defendant had prepared an alibi for 9:15, the State, according to the defendant, should have informed the defendant of the new alleged time. Defendant also argues that the State initially provided the incorrect time and this was why an alibi was prepared for 9:15. The State clearly believed the robbery occurred at 9:15, as it freely admitted at the pretrial hearing. However, a review of the testimony given at the hearing on the application for post conviction relief does not support the defendant's argument that the State's misrepresentations caused the defense to prepare an alibi for 9:15. Further, the record supports a finding that information concerning the discrepancies in time was timely conveyed to the defendant.
Defense counsel testified that he was not in possession of any written answers from the State telling him what time the crime occurred. Further, Jenkins testified that he decided to prepare his alibi defense based on his investigation and the police report. It is unclear whether the defense received the police report from the State. When questioned about the incident report, defense counsel admitted that it was one of the police reports that came up in the trial. The State questioned the defense attorney concerning where he obtained the 9:15 time from if there was no discussion of it and he did not have the report. When asked if he had something from the State, Jenkins replied, "Well, actually, I didn't have anything from the State. You have to remember that Mr. Dolen had this case initially, and what was turned over was turned over to him, and I received his file." However, he eventually conceded that he had something in the file received from Dolen from which he determined the robbery occurred at 9:15.
Landrieu disavowed any knowledge of any discovery being served on him requesting the time of the crime. Both he and Jenkins speculated that a bill of particulars was filed earlier in the case prior to the time that either of them became involved in the case. However, a copy of the bill of particulars was never produced which would indicate if time of the robbery was requested. At the hearing on post conviction relief the prosecutor was asked to review the court record to find any service or court filing of a motion for a bill of particulars allegedly filed in section G. After perusing the record, Landrieu stated, "I don't see a written Bill of Particulars filed here for any attorney, much less Mr. Jenkins."
As no Bill of Particulars was ever produced at the hearing on the application for post conviction relief and none was found in the record, it is clear that no written proof of a Brady violation exists.
Although the defendant now maintains the correct time of the robbery was 8:15, not 9:15, the record clearly supports a finding that both the defense and the State originally believed the offense occurred at 9:15. Having attempted to impeach the eyewitness and the police officer at trial with the discrepancy between the time the eyewitness said the robbery occurred at trial and the time given in the police reports, the defendant now maintains the robbery occurred at 8:15, and the failure of the State to provide this time as the time of the robbery constitutes a Brady violation.
A review of the hearing on post conviction relief reveals that the defense attorney received notice that a possibility existed *297 that the offense occurred at 8:15 at exactly the same time the State learned of this. During the hearing to determine if the alibi witness would be allowed to testify, the trial judge specifically stated that the arrest register he was looking at stated that the incident occurred at approximately 8:15.[1] However, both parties dismissed the statement. The defense stated that it happened at 9:15, and the State agreed it happened at 9:15. In fact, Landrieu believed that the 8:15 time might be a misprint because the police reports had 9:15.
He did not become aware of the discrepancy in time until the morning of trial when the eyewitness told him the correct time was 8:15. When faced with this new information, the prosecutor stated he was unable to say when the correct time of the crime was. The police report said 9:15 and the eyewitness said 8:15. When asked why he never told Jenkins that he had prepared the defense for the wrong time, Landrieu stated that the defense never filed a bill of particulars and never asked him for the correct time of the event.
However, he also testified that after the eyewitness told him the time was different, he went out in the hallway and discussed it with the officers and came to the conclusion that 9:15 may have been the correct time. He had conflicting statements from the victim and police officers. Landrieu, himself, was actually unsure of the time the robbery actually occurred.
The evidence also supports a finding that the defense knew of the time discrepancy almost immediately after the State. Certainly defense counsel knew of the discrepancy prior to the commencement of trial as evidenced by the following testimony given at the hearing on the application for post conviction relief:
Q. When did you first discover that your entire defense was prepared for the wrong time?
A. Probably about forty-seven seconds before the Jury was coming in, because the Jury was in the back, the Judge was waiting to bring them in. We walked up to the podiumit was downstairs in Section "G", where they are nowand at that point, we were told that that's the wrong time.

Q. That what was thethat nine fifteen was theat this time, in other words, that this conversation took place, is that what you're saying?
A. Right.
Q. That's fine. You're going into Jury selection with the belief that the time in question saysthat the correct time is eight fifteen, is that correct?
A. Correct.
Q. When did you first find out for real that you had prepared the wrong time for an alibi?
A. The moment the Courtthe time the trial was supposed to start.
Q. Youlet me rephrase. The victim gets on the witness stand, does she not?
A. Right.
Q. She gets cross-examined by you, does she not?
A. That's correct.
Q. I've included that cross-examination in this application, have I not?
A (No Response).
Q. Prior to her answering those questions, did you know what her answers were going to be?
A. No.
Q. So, let me ask it to you again. When did you find out for sure you prepared the
A. Well, when she testified.
(emphasis added)
Again on cross examination, it was clear the defense knew of the time discrepancy prior to trial. He admitted that the prosecutor approached him and discussed the time discrepancy in the report. The fact *298 that the defense knew of the time discrepancy prior to trial was also corroborated by the State. When asked why he did not orally tell defense counsel the time he was using was wrong, the prosecutor replied, "Your Honor, Mr. Jenkins knew this information prior to trial."
Additionally, it should be noted that at the time the eyewitness told the prosecutor of the new time, the trial judge had already alerted both the prosecutor and the defense to the fact that the arrest register gave the time of the crime as 8:15, not 9:15.
Although both parties knew of the time discrepancy prior to trial, the defendant now seems to argue it was the duty of the State to ascertain whether 8:15 or 9:15 was the correct time and notify him of the correct time earlier because this was Brady material. However, both the defense and the prosecutor admitted that the issue of the time discrepancy was in fact presented to the jury. At trial both sides questioned witnesses about the time discrepancy. Although the defense now maintains 8:15 was the correct time of the offense, at trial the defense attempted to utilize the time discrepancy as impeachment material. Significantly, the defendant also presented alibi testimony for two time periods. Dove testified the defendant was at the Abadie Street address around 9:00. The defendant's mother testified that she saw the defendant at the Abadie Street address at eleven o'clock. Although the eleven o'clock time period was not at issue it appears the defense produced the witnesses it could locate for a broad time span in the morning hours. Counsel certainly did not limit himself to just the 9:15 time period.
The Brady cases cited by the defense are not relevant to this case, as all involve cases wherein the State failed to promptly disclose material evidence to the defense. In the instant case the defendant's main defense was alibi. Certainly time of the offense was material, if the defendant planned to show he was elsewhere when the crime occurred. However, unless the defendant had a witness to actually place him elsewhere at the time of the offense, the fact that the crime occurred at 8:15 instead of 9:15 would not be material or exculpatory on the question of his guilt. To date, he has not presented a witness to place him elsewhere at 8:15. Thus, the fact that the crime occurred at 8:15 instead of 9:15 is not material to the issue of guilt or innocence.
In the absence of proof that the State was responsible for the change in time and in light of the fact that the State informed the defendant of the time discrepancy as soon as it became aware of the discrepancy, no Brady violation was shown. Absent any proof that an alibi witness for the 8:15 time period exists, we cannot say the defendant was prejudiced by the time change.
Accordingly, the judgment of the trial court granting defendant's application for post conviction relief is reversed.
WRIT GRANTED; JUDGEMENT REVERSED.
MURRAY, J., concurs in the result.
NOTES
[1] Whether the prosecutor had a copy of the arrest register is unclear from the record.